897 A.2d 810

**Mary A. CONTEH**

v.

**Ansu Z. CONTEH.**

**No. 104, Sept. Term, 2003.**

Court of Appeals of Maryland.

May 4, 2006.

Thomas L. Harlow, Rockville, for appellant.

Alice Pare-Johnson (Law Offices of Alice Pare-Johnson, Germantown, on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The General Assembly, by Ch. 794 of the Acts of 1978, authorized a court, in granting a divorce or an annulment, to (1) "determine which property is marital property," (2) "determine the value of all marital property," and (3) "grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property." Ch. 794 expressly stated that "marital property is all property, however titled, acquired by either or both spouses during their marriage." III *Laws of Maryland 1978* at 2306, 2308. These provisions are presently codified as Maryland Code (1984, 2004 Repl. Vol.), §§ 8–201 through 8–205 of the Family Law Article. Section 8–201(e)(1) of the Family Law Article currently provides that " 'Marital property' means the property, however titled, acquired by one or both parties during the marriage." [1]

This Court in *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981), held that all types of pension rights acquired during the marriage constitute marital property. Almost three years later, in *Lookingbill v. Lookingbill*, 301 Md. 283, 284, 289, 483 A.2d 1, 4 (1984), the Court held that *Deering* applied to pension benefits based on "a work-related injury" under a disability plan, and that such benefits are "marital property subject to equitable distribution."

---

1. The three-step process of determining what is marital property, arriving at the value of the marital property, and making a monetary award, has been discussed by this Court in several opinions, including *Alston v. Alston*, 331 Md. 496, 498–500, 629 A.2d 70, 71 (1993); *Pope v. Pope*, 322 Md. 277, 279, 587 A.2d 481, 482 (1991); *Prahinski v. Prahinski*, 321 Md. 227, 229–231, 582 A.2d 784, 786 (1990); *Zandford v. Wiens*, 314 Md. 102, 106, 549 A.2d 13, 14–15 (1988); *Niroo v. Niroo*, 313 Md. 226, 231–232, 545 A.2d 35, 37–38 (1988). *See also Solomon v. Solomon*, 383 Md. 176, 857 A.2d 1109 (2004); *Klingenberg v. Klingenberg*, 342 Md. 315, 675 A.2d 551 (1996); *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982).

In the case at bar, the trial judge decided that the appellee's pension benefits under a disability retirement plan, acquired during his marriage to the appellant, did not constitute marital property. The appellee, in asking that this Court affirm the trial judge's decision, acknowledges that *Lookingbill v. Lookingbill, supra,* is directly on point and that the trial judge's decision is contrary to *Lookingbill.* Nonetheless, the appellee argues that *Lookingbill* should be overruled.

For the reasons hereafter set forth, we decline to overrule *Lookingbill,* and we shall reverse the trial court's judgment.

I.

The relevant facts are as follows. Mary and Ansu Conteh were married in October 1981, and they separated in January 2000. In May 2000, Mrs. Conteh filed, in the Circuit Court for Montgomery County, a complaint for pendente lite custody, support and related relief. After the parties remained separate for one year, Mrs. Conteh filed an amended complaint for absolute divorce, requesting, among other things, that the trial court determine, value, and distribute the "marital property" owned by the parties. Specifically, Mrs. Conteh requested that she be granted a monetary award and that an interest in Mr. Conteh's pension plan be transferred to her.

A hearing was held before a Family Division Master in the Circuit Court for Montgomery County. At that hearing, Mrs. Conteh requested the entry of a Qualified Domestic Relations Order for the purpose of dividing Mr. Conteh's service-connected disability retirement benefits. Mr. Conteh had been receiving those benefits from Montgomery County since 1998, because of a work-related injury which he suffered during the course of his employment with Montgomery County's Department of Liquor Control. At the time of the hearing, Mr. Conteh was receiving $1,847.15 per month from Montgomery County. Mr. Conteh argued that the retirement benefits were not marital property but should be treated as a worker's compensation award because the benefits could be directly

traced to the injury which he suffered while working for Montgomery County.

The Master heard testimony and received other evidence on the matter. Most notably, Nicholas Hillman, a benefits specialist employed by the Department of Human Resources for the Montgomery County Government, testified that Mr. Conteh's retirement benefits are permanent benefits, for which he is not subject to periodic medical reviews. Mr. Hillman stated that benefits under the service-connected disability retirement plan are not worker's compensation benefits, and that Mr. Conteh never applied for worker's compensation benefits. He further testified that the only restriction placed on Mr. Conteh's retirement benefits is that Montgomery County has the right to make a dollar for dollar reduction in the benefits if Mr. Conteh earns outside income in excess of the maximum salary that he received while employed by Montgomery County. Moreover, Mr. Hillman testified that, in his experience, Qualified Domestic Relations Orders were commonplace for this type of benefits.

At the conclusion of the hearing, the Master recommended that Mrs. Conteh be granted an absolute divorce on the grounds of voluntary separation for a period of more than one year. The Master also distinguished the benefits which Mr. Conteh received through his service-connected disability plan from worker's compensation benefits. He explained as follows:

"Let's look at the purpose of workman's compensation. Workman's compensation is a state mandated benefit that employers must provide which serves in lieu of and precludes the common law right of an employee to sue an employer for an injury suffered on the job.

"In other words, it actually replaces tort action. As we know, from the *Unkle* case and others, . . . that a personal injury case is treated differently than retirement. This retirement, this service connected disability, is no workman's compensation. There is no specific compensation for the nature of the injury itself.

"This is part of the compensation package that a party receives when they enter this employment. Like any other retirement package, which in this case said, you can either retire on the basis that you have served a number of years and now you want to retire, or you can retire sooner if you suffer a permanent disability.

"This is a marital asset that is for the benefit of the family unit."

Consequently, the Master recommended that Mrs. Conteh be awarded an amount equal to 50 percent of the service-connected disability pension benefits received by Mr. Conteh from Montgomery County. He further recommended that a Qualified Domestic Relations Order or other court order be issued to effectuate that recommendation, and that Mr. Conteh pay the sum of $819.00 per month until such order takes effect.

Mr. Conteh filed exceptions to the Master's recommendations on three issues, and a hearing was held on the matter before the Circuit Court. At the conclusion of the hearing, the judge overruled two of the exceptions relating to issues which are not raised on this appeal. The trial judge took the third issue, whether Mr. Conteh's disability retirement benefits are marital property, under advisement. The judge later ruled that Mr. Conteh's retirement benefits are not "marital property," granting the appellee's exception on this issue. In so ruling, the trial judge purported to distinguish the present case from *Lookingbill v. Lookingbill, supra,* 301 Md. 283, 483 A.2d 1, on the following ground:

"Well, this case distinguishes the case at bar from *Lookingbill* by virtue of the fact that neither spouse in any marriage relationship, either envisions or plans to go out and break his or her back or injure any other part of their body as a contribution to the marital unit, and that is what distinguishes this case from the cases cited by counsel in support of the disability payments being marital."

The trial court subsequently entered a final judgment granting an absolute divorce and deciding other matters. Mrs. Conteh appealed to the Court of Special Appeals, and this

Court issued a writ of certiorari before argument in the Court of Special Appeals. *Conteh v. Conteh*, 379 Md. 98, 839 A.2d 741 (2004).

Mrs. Conteh argues that Mr. Conteh's service-connected disability retirement benefits are marital property under §§ 8–201(e) and 8–203 of the Family Law Article, and that she is entitled to an equitable distribution under § 8–205 of the Family Law Article. Mr. Conteh, as earlier mentioned, argues that the trial judge correctly found that his service-connected disability retirement benefits do not constitute marital property, and that this Court's holding in the *Lookingbill* case should be overruled. Mr. Conteh maintains that *Lookingbill* represents a "mechanistic approach" for determining what is marital property, and that this Court, instead, should utilize a so-called "analytical approach," which, he asserts, focuses on "the spouses' 'contribution' and 'effort' in the acquisition of the" benefits and on the "purpose" for which the benefits are received. (Appellee's brief at 9). Mr. Conteh contends that, because Mrs. Conteh "did not expend any effort in the acquisition of the employment related benefit[s]" and because the "purpose" of the service-connected disability retirement benefits was to compensate Mr. Conteh for an injury, the benefits should not be treated as marital property. (*Id.* at 22, 25).

## II.

Preliminarily, there is no basis for distinguishing the present case from *Lookingbill v. Lookingbill.* The ground upon which the trial judge below purported to distinguish the two cases has no validity.

In *Lookingbill,* as in the case at bar, the husband was an employee of a county government who, during the marriage, suffered "a work-related injury, that is, an injury occurring during the actual performance of the employee's duties," *Lookingbill,* 301 Md. at 284, 483 A.2d at 1. Consequently, in the language of the trial judge in this case, the parties in *Lookingbill,* like the parties in the case at bar, did not "either

envision [ ] or plan[ ] to go out and ... injure any ... part of their body as a contribution to the marital unit...." In *Lookingbill*, as here, the local government disability retirement plan provided for benefits "regardless of age or length of service," 301 Md. at 284, 483 A.2d at 1. Also in *Lookingbill*, as in this case, the working spouses contributed to the plans with money that could have otherwise been utilized by both spouses in each of the marital units.

As recognized by both sides before this Court, *Lookingbill* is directly on point. An affirmance of the Circuit Court in this case would clearly require that we overrule *Lookingbill*. It would also require that we significantly narrow the holding in *Deering v. Deering, supra,* 292 Md. 115, 437 A.2d 883.

### III.

When first enacted in 1978, and for an eight-year period thereafter, the Maryland marital property statute did not expressly state whether pension rights, acquired during the marriage, constituted marital property. The issue first arose in *Deering,* 292 Md. 115, 437 A.2d 883, decided in 1981. In that case, two former wives appealed the trial court's determination that the pension rights acquired by their husbands during the marriages were not marital property. This Court held in *Deering* that rights to retirement benefits, acquired during marriage, are marital property, and as such, are subject to equitable distribution. In so holding, this Court pointed out that every other state which had decided this issue had held retirement benefits to be marital property. The *Deering* Court, in a comprehensive opinion by Judge J. Dudley Digges, explained, 292 Md. at 122–123, 437 A.2d at 887, that

"pension benefits have become an increasingly important part of an employee's compensation package which he or she brings to a marriage unit. Moreover, in a situation where economic circumstances prevent a husband and wife from saving or investing a portion of the wage earner's income, the pension right swells in importance as retirement or vesting approaches, and may well represent the most

valuable asset accumulated by either of the marriage part-
ners.

\* \* \*

"Accordingly, those states, which, like Maryland, confer
authority on courts considering divorce matters to make
some form of distribution of joint and separate property
upon termination of a marriage, with near unanimity, sub-
ject retirement benefits in general to division between the
former spouses."

After reviewing numerous opinions by courts in other states,
the *Deering* opinion continued (292 Md. at 124–125, 437 A.2d
at 888):

"This compendium of representative cases essentially
views pension benefits as an economic resource acquired
with the fruits of the wage earner spouse's labors which
would otherwise have been utilized by the parties during the
marriage to purchase other deferred income assets.

\* \* \*

We agree with the analysis used by our sister states, for
there is no reason to exclude one form of deferred income
asset from the marital estate while including others. Both
the nonemployed spouse and his or her wage earning mari-
tal partner have the same retirement goals and expectancies
regarding the pension benefits as they would if they provid-
ed for their later years by using wage income to purchase
other investments."

The Court in *Deering* also relied upon "the sweeping lan-
guage of" Maryland's marital property statute, under which
" 'marital property' is defined as '*all property,* however titled,
acquired by either or both spouses during the marriage.' "
(*Deering,* 292 Md. at 125, 437 A.2d at 889, emphasis in
original). Judge Digges pointed out that the "term property"
is " 'of wide and rather comprehensive signification,' " *ibid.,*
quoting *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914,
915 (1965).

The *Deering* opinion next discussed the "wide variety of retirement plans," that "the rights which beneficiaries possess depend on many factors," that some rights are vested or not vested, matured or unmatured, that some plans are contributory whereas others are noncontributory, and that some benefits depend upon contingencies. *Deering*, 292 Md. at 125–128, 437 A.2d at 889–890. The Court pointed out that courts in some states distinguish between different types of plans in determining whether the pension rights constitute marital property, whereas courts in other states have held that all types of plans involve "a contractual right," and thus would be marital property if the right was acquired during marriage. The Court in *Deering* expressly agreed with the latter group of cases, 292 Md. at 128, 437 A.2d at 890.

As previously mentioned, about three years after *Deering*, this Court in *Lookingbill v. Lookingbill, supra,* 301 Md. 283, 483 A.2d 1, held that benefits for a work-related injury under a disability retirement plan were marital property. In that case, Judge Marvin Smith for the Court extensively reviewed the *Deering* opinion and the statute, pointed to the "sweeping" statutory definition of marital property, and emphasized that, under the holding in *Deering*, all types of pension plans fall within the definition of marital property. The Court in *Lookingbill* explained (301 Md. at 289, 483 A.2d at 4):

> "We declared in *Deering* that the fact that a pension right may be contingent upon the happening of certain events does not degrade that right to an expectancy; the law has long recognized that a contingent future interest is property. We agreed with the statement of the court in *In re Marriage of Brown*, 15 Cal.3d 838, 848, 126 Cal.Rptr. 633, 639, 544 P.2d 561, 567 (1976) (en banc) that such contingencies should not be taken into account by the trial court when determining whether the retirement plan is properly includable in the marital estate. *Deering*, 292 Md. at 128, 437 A.2d 883."

The *Lookingbill* opinion concluded (301 Md. at 289, 483 A.2d at 4):

"There are many types of retirement plans under which the rights the beneficiaries possess often differ, depending on a wide variety of factors. *Deering*, following the dominant trend of the law, rejected such distinctions in making the threshold determination of whether a retirement plan is marital property. 292 Md. at 126–127, 437 A.2d 883. Consideration of any contingent nature of such rights is postponed until a valuation of the marital property is made. *Id.* Pension payments are actually partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability. Thus, a disability plan, like a service plan, is property and, within the meaning of the Act, constitutes marital property subject to equitable distribution. Inasmuch as the teachings of *Deering* with respect to service plans are equally applicable to disability plans, *Deering* is dispositive of the issue now considered."

This Court has consistently reaffirmed the holdings in *Deering* and *Lookingbill* that *all* types of pension rights, including service connected disability pension rights, acquired during marriage, are marital property within the meaning of the statute. While *Queen v. Queen*, 308 Md. 574, 579, 521 A.2d 320, 323 (1987), held that only a portion of a worker's compensation award was marital property, the Court in *Queen* quoted *Lookingbill* to the effect that benefits under a disability pension plan " 'constitute[ ] marital property subject to equitable distribution.' "

In *Prince George's County v. Burke*, 321 Md. 699, 704–705, 584 A.2d 702, 705 (1991), this Court reiterated:

"It is a well-settled principle in Maryland divorce law that pension benefits, to the extent accumulated during marriage, are marital property. *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981). A work-related disability pension plan likewise has been found to constitute marital property. *Lookingbill v. Lookingbill*, 301 Md. 283, 483 A.2d 1 (1984). 'Pension payments are actually partial consideration for past

employment whether the maturity of the pension is contingent upon age and service or upon disability.' *Id.* at 289, 483 A.2d at 4."

*See also, e.g., Andresen v. Andresen,* 317 Md. 380, 382, 564 A.2d 399, 400 (1989) ("[I]n *Deering* ... we held that, as a matter of Maryland law, *all* pensions and retirement benefits accruing during the marriage were marital property," emphasis added); *Niroo v. Niroo,* 313 Md. 226, 233, 545 A.2d 35, 38 (1988) ("Under this broad concept of property, we have found that marital property includes ... a work-related ... disability pension plan, *Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984)"); *Unkle v. Unkle,* 305 Md. 587, 590, 505 A.2d 849, 851 (1986) (Pointing out that pension rights are marital property "regardless of the type of retirement plan"); *Archer v. Archer,* 303 Md. 347, 356, 493 A.2d 1074, 1079 (1985) (A "spouse's pension rights ... constitute a form of 'marital property' ... regardless of the type of retirement plan").

Although it is significant that this Court has continually reaffirmed the holdings of *Deering* and *Lookingbill,* the action of the General Assembly after those cases were decided is even more important. By Ch. 765 of the Acts of 1986, the General Assembly for the first time expressly provided that rights, acquired during the marriage, under "a pension, retirement, profit sharing, or deferred compensation plan" constitute marital property. The 1986 Act also authorized a *court to* "transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from one party to either or both parties...." V *Laws of Maryland 1986* at 2921. The statute did not provide that only certain types of pension or retirement plan rights were marital property; instead, it applied to *all* types of pension or retirement plans.

While Ch. 765's authorization for courts to transfer interests in pension or retirement plans was prompted by changes in federal law, the premise for the statute was the Legislature's agreement with the *Deering* and *Lookingbill* decisions that rights, acquired during marriage, under all types of pension or

retirement plans, constituted marital property.[2] The Senate Judicial Proceedings Committee Report on House Bill 1033 of the 1986 General Assembly session, which bill became Ch. 765 of the Acts of 1986, begins by referring to this Court's decision in the *Deering* case. The Department of Legislative Reference's file on House Bill 1033 is extensive, containing letters from various sections of the Maryland State Bar Association, letters from other interested parties, reports, fiscal notes, memoranda, etc. There is no suggestion in any of this material that some types of pension rights, such as work-related disability pension rights, are not marital property.

The principal portion of Ch. 765 of the Acts of 1986 is presently codified in § 8–205(a)(2) of the Family Law Article, which authorizes a court to "transfer ownership of an interest in ... a pension, retirement, profit sharing, or deferred compensation plan, from one party to either or both parties...." *See also* §§ 8–203(b) and 8–204(b) of the Family Law Article. The marital property sections of the Family Law Article, including the subsections referring to pensions and retirement plans, have been amended by the General Assembly from time to time since 1986. *See, e.g.,* Ch. 462 of the Acts of 1994; Ch. 457 of the Acts of 2004. The General Assembly has not, however, modified the holdings in *Deering* and *Lookingbill* and provided that certain types of pension rights are not marital property. Instead, in accordance with *Deering* and *Lookingbill,* the Legislature has consistently treated all pension rights acquired during the marriage as marital property.

The above-described judicial-legislative history presents a situation where this Court has consistently refused to overrule a prior interpretation of a statute. The principle was set forth in *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981), as follows:

---

2. For discussions of Ch. 765 of the Acts of 1986 and the federal law changes, *see Klingenberg v. Klingenberg, supra,* 342 Md. at 325- 327, 675 A.2d at 555–557; *Prince George's County v. Burke,* 321 Md. 699, 706–707, 584 A.2d 702, 706 (1991); *Rohrbeck v. Rohrbeck,* 318 Md. 28, 30–36, 566 A.2d 767, 768–771 (1989).

"The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation. *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A.2d 817 (1976). This presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue. *Harbor Island Marina, Inc. v. Board of County Commissioners of Calvert Co.,* 286 Md. 303, 322–323, 407 A.2d 738 (1979); *Director v. Cash,* 269 Md. 331, 345, 305 A.2d 833 *(1973)cert. denied sub nom. Vucci v. Boslow,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880 (1969). Under these circumstances, it is particularly inappropriate to depart from the principle of *stare decisis* and overrule our prior interpretation of the statute. *White v. Prince George's Co.,* 282 Md. 641, 657–658, 387 A.2d 260 (1978). *See also Flood v. Kuhn,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972)."

*See, e.g., Plein v. Dept. of Labor,* 369 Md. 421, 437, 800 A.2d 757, 767 (2002) ("[W]e have been reluctant to overrule our prior decisions where it is likely that the Legislature, by its inaction, indicates its adoption ... of the [earlier] interpretation"); *Jones v. State,* 362 Md. 331, 337, 765 A.2d 127, 130 (2001) (The statute "was repealed and reenacted with amendments ... on two occasions after the opinion" interpreting it, but "on both occasions, the General Assembly did not modify the critical statutory language construed in" the earlier case. "As emphasized on several occasions by the Court, '[u]nder these circumstances a court should be most reluctant to overrule its prior interpretation' "); *Shah v. Howard County,* 337 Md. 248, 256, 653 A.2d 425, 429 (1995) ("By not amending that section" when it amended the statute, "the Legislature indicated an intent that the decision [in the earlier case interpreting the statute] should continue to control"); *Work-*

*ers' Compensation Commission v. Driver,* 336 Md. 105, 120–121, 647 A.2d 96, 104 (1994), and cases there cited.[3]

The actions and inaction by the General Assembly after the *Deering* and *Lookingbill* decisions require the strongest adherence to the principle of stare decisis. If *Deering* is to be narrowed and *Lookingbill* overruled, it clearly should be done by the General Assembly and not by this Court.

Moreover, even if the principle of stare decisis were nonexistent, there are numerous problems with the appellee Conteh's theory that the "effort expended" by each of the spouses in acquiring benefits, and the "purpose" of the benefits, should determine their status as marital property.

It is clear from the statutory language and the cases that property acquired by either spouse during the marriage, and not within a statutory exception, constitutes marital property regardless of which spouse's "effort" was directly responsible for the acquisition of the specific item of property. The "effort expended by each party in accumulating the marital property" is expressly made one of the factors to be considered in making an award or transferring an interest in the property; it is not a factor in determining initially what is marital property. *See* § 8–205(b)(8) of the Family Law Article.[4] If particular property directly acquired by the efforts of

---

**3.** There are, of course, circumstances in which this principle applies with lesser force or is inapplicable. For example, the principle "has little or no application when the [prior] judicial construction of the statute is not by the highest court of the jurisdiction involved." *United States v. Streidel,* 329 Md. 533, 551 n. 12, 620 A.2d 905, 914 n. 12 (1993). The principle is also inapplicable when this Court's "decisions [interpreting particular statutory language] have not been uniform or consistent," *Harris v. Board of Education,* 375 Md. 21, 42, 825 A.2d 365, 378 (2003).

**4.** Section 8–205 provides as follows (emphasis added):
"**§ 8–205. Same–Award.**
(a) *Grant of award.*—(1) Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in property described in paragraph (2) of this subsection, grant a monetary award, or both, as an

only one spouse were not marital property, one of the principal purposes of the marital property statute would be defeated. A chief reason for the statute was "giving recognition to the non-monetary contribution of one spouse with regard to the acquisition of property by either or both spouses during the marriage." *Alston v. Alston*, 331 Md. 496, 506, 629 A.2d 70, 71 (1993). *See also, e.g., Harper v. Harper*, 294 Md. 54, 61–64, 448 A.2d 916, 919–921 (1982).

---

adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

(2) The court may transfer ownership of an interest in:

(i) a pension, retirement, profit sharing, or deferred compensation plan, from one party to either or both parties; and

(ii) subject to the consent of any lienholders, family use personnel property, from one or both parties to either or both parties.

(b) *Factors in determining amount and method of payment or terms of transfer.*—The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, after considering each of the following factors:

(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interest of each party;

(3) The economic circumstances of each party at the time the award is to be made;

(4) The circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, *including the effort expended by each party in accumulating the marital property or the interest in property* described in subsection (1)(2) of this section, or both;

(9) the contribution by either party of property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.

Appellee Conteh's emphasis on the "purpose" of the disability benefits under his retirement plan overlooks the fact that such retirement plans may have more than one purpose. The right to pension payments, including disability pension payments, was an "important part of [Mr. Conteh's] employee[ ] compensation package which he . . . [brought] to a marriage unit." *Deering v. Deering, supra,* 292 Md. at 122, 437 A.2d at 887. The pension payments by the employer were "partial consideration for past employment whether the maturity of the pension is contingent upon age and service or upon disability." *Lookingbill v. Lookingbill, supra,* 301 Md. at 289, 483 A.2d at 4. If Mr. Conteh had not made the contributions to the pension plan during the marriage, the money could have been used by the marital unit for other purposes. It is an over-simplification to say that the only "purpose" of a disability retirement plan is to compensate one for an injury, and that rights under such a plan are indistinguishable from a worker's compensation award.

Finally, Mr. Conteh's argument totally overlooks the statutory language and the proper role of this Court. We are not engaged in a theoretical exercise of formulating the most desirable definition of "marital property" or creating guidelines for determining what is marital property. We have not been delegated the authority to select between competing "approaches" for defining marital property. Rather, we are applying a relatively clear and brief statutory definition, in an effort to decide cases in accordance with the General Assembly's intent. The General Assembly provided that " 'Marital property' means the property, however, titled, acquired by one or both parties during the marriage." Section 8–201(e)(1) of the Family Law Article. The definition does not refer to which party's "efforts" were expended to acquire the property; instead, the statutory language is contrary to any such concept. In addition, the definition contains nothing about the

(c) *Award reduced to judgment.*—The court may reduce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing.

"purpose" for which a property right was acquired during the marriage.

The "right" to pension benefits is clearly a property right. In the case at bar, the right was undisputedly acquired during the marriage. Consequently, the benefits under Mr. Conteh's disability pension plan constitute marital property.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED, AND CASE REMAND-ED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.*