*Lori A. Robinette v. Luann Hunsecker*
No. 90, September Term 2013

**Family Law - Divorce - Property Settlement - Retirement and Death Benefits - Constructive Trust.** A property settlement agreement in a divorce allocated to the wife a share of the future pension and death benefits of the husband, who was a participant in a government retirement plan exempt from the Employee Retirement Income Security Act of 1974 ("ERISA"). But that provision of the property settlement agreement was not formally communicated to the retirement plan and the husband later named his second wife as his beneficiary under the plan. Following the husband's death, the first wife sought a portion of the death benefits already paid, and to be paid in the future, to the second wife. The Circuit Court had authority (1) to impose a constructive trust in favor of the first wife on a portion of the benefits already received by the second wife and (2) to issue an order directing the plan to pay a portion of future benefits under the plan to the first wife.

Circuit Court for Frederick County
Case No. 10-C-11-000169
Argued: April 3, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 90

September Term, 2013

L ORI  A. R OBINETTE

v.

L UANN  H UNSECKER

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Wilner, Alan M. (Retired,
specially assigned),

JJ.

Opinion by McDonald, J.

Filed: July 18, 2014

In this case, a divorcing couple entered into a property settlement agreement that included an allocation of future benefits from the retirement plan sponsored by the husband's employer. In describing the parties' understanding, the agreement used terminology appropriate to retirement plans governed by a federal law – although the husband's plan was exempt from that law – and contemplated, incorrectly, that the divorce judgment itself would effect the division of the retirement plan benefits. Neither party took any action to put into effect the understanding concerning the retirement plan expressed in the property settlement agreement. After the husband remarried, he designated his new wife as his beneficiary under the retirement plan. Upon his death, a dispute arose between the former wife and the second wife concerning the former wife's entitlement to a portion of the retirement plan benefits.

The Circuit Court for Frederick County issued an order that established a constructive trust in favor of the former wife with respect to a portion of the benefits already paid to the second wife and ordered the plan to allocate future benefits between the two women in a similar fashion. The Court of Special Appeals affirmed that decision. And so do we.

**Background**

*Allocation of Retirement Plan Benefits in Divorce*

One of the issues that must be resolved in most divorces is the disposition of marital property. A court that grants a divorce has authority to determine which property is marital property, to assess its value, to order the transfer of ownership of certain categories of property, and to grant a monetary award to adjust "the equities and rights of the parties." Maryland Code, Family Law Article ("FL"), §8-201 through §8-205; *see Conteh v. Conteh*,

392 Md. 436, 437, 897 A.2d 810 (2006). Among the property rights that may be allocated as part of such a proceeding is a spouse's interest in a retirement plan earned during the course of the marriage. *See Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1982). In particular, FL §8-205(a)(2)(i) specifically authorizes a trial court to transfer ownership of an interest in pension and retirement benefits that is marital property.[1] In lieu of these judicial determinations, a divorcing couple may enter into an agreement for the allocation of their property, including retirement plan benefits. FL §8-101.

Allocation of retirement plan benefits in the context of a divorce must often take account of the federal Employee Retirement Income Security Act of 1974 ("ERISA"), originally enacted as Pub. L. No. 93-406, 88 Stat. 829. ERISA established various requirements to better protect those covered by retirement plans in private workplaces and broadly preempted contrary state laws. *See Rohrbeck v. Rohrbeck,* 318 Md. 28, 566 A.2d 767 (1989). Among those requirements, the statute limits the ability of a participant in a retirement plan subject to ERISA to transfer or "alienate" pension benefits. 318 Md. at 30-31. This restriction would seemingly hinder the transfer of such benefits by a state court in a divorce case or by the divorcing parties in a property settlement agreement that was incorporated in a divorce judgment. *Id*. at 32. As amended by the Retirement Equity Act of

---

[1] While FL §8-204(b)(1) states that a court need not determine the value of pension and retirement benefits unless the parties contest the value of the benefits, a trial court has broad discretion not only with respect to evaluating pension benefits as marital property but also in the manner of distributing them. *Imagnu v. Wodajo*, 85 Md. App. 208, 212-16, 582 A.2d 590 (1990).

1984, Pub. L. No. 98-397, 98 Stat. 1433, however, ERISA allows for an "alternate payee" to receive all or a portion of the benefits payable to a participant pursuant to a court order that satisfies various requirements set forth in the federal statute. *Rohrbeck,* 318 Md. at 32-36. Such a court order is called a "qualified domestic relations order" or "QDRO" in ERISA lingo. *See* 29 U.S.C. §1056(d)(3); 26 U.S.C. §414(p).

ERISA's requirements broadly apply to most retirement plans and preempt contrary provisions of state law. 29 U.S.C. §1144(a). But not all retirement plans are regulated by ERISA. Notably, government-sponsored plans are specifically exempt from the federal statute. *See* 29 U.S.C. §1003(b)(1).

Courts in Maryland have come to use orders similar to QDROs for the allocation of plan benefits between divorcing spouses with respect to retirement plans that are exempt from, and therefore not governed by, ERISA. C. Callahan & T. C. Ries, Fader's Maryland Family Law (5th ed. 2012), §12-3[c]. Thus, although the concept and acronym are creatures of ERISA, the label "QDRO" may have achieved a broader meaning. As is often the case with a living language, the term has sometimes leapt the boundaries of its formal meaning to encompass generically orders in divorces that distribute retirement plan benefits, much as "xerox copy" became a synonym for "photocopy" regardless of the machine used to produce it, and the verb "google" has come to mean searching the Internet regardless of the search

3

engine being used.[2] *See Dennis v. Fire & Police Employees' Retirement System*, 390 Md. 639, 890 A.2d 737 (2006) (discussing a "QDRO" with reference to a government-sponsored retirement plan exempt from ERISA).[3]

*A Marriage, a Divorce, a Re-Marriage, a Death, and a Dispute over Benefits*

On June 6, 1981, Respondent Luann Hunsecker ("Ex-Wife") married Roger Robinette ("Husband").[4]  During their marriage, Husband was employed by the Montgomery County Public Schools ("MCPS") and participated in the pension plan available to MCPS employees. The marriage eventually foundered and, in April 1998, Husband and Ex-Wife executed a Voluntary Separation and Property Settlement Agreement ("Agreement").  With respect to the settlement of their respective property rights, the Agreement generally confirmed the parties' prior division of certain categories of property between themselves and specifically

---

[2] *See* 2 Shorter Oxford English Dictionary (6th ed. 2007) (emphasis added), defining "xerox" as ("Proprietary name for) a machine for making copies by xerography; *loosely* a photocopy."; New Oxford American Dictionary 748 (3d ed. 2010), defining "google" as a "search of information about (someone or something) on the Internet" as well as "a trademark for a popular Internet search engine."

[3] Although not specifically discussed in the *Dennis* opinion, an earlier decision in the same case made clear that the retirement plan at issue in *Dennis* was a governmental pension plan offered by Baltimore City.  *See Brown v. Fire & Police Employees' Retirement System*, 375 Md. 661, 665, 826 A.2d 525 (2003).

[4] For simplicity we refer to the parties and Mr. Robinette throughout this opinion solely by their marital status – a key fact governing the parties' legal contentions.  No disrespect is intended.

4

allocated other property.[5]   The Agreement provided for Ex-Wife to receive a portion of Husband's pension benefits, including any death benefit, that accrued during the marriage. Specifically, paragraph 8 of the Agreement provided, in relevant part:

> 8. PENSION.  Husband is a participant in a pension plan through his employment with Montgomery County Public Schools.  The parties agree that [Ex-Wife] <u>shall be the alternate payee of the aforesaid pension and the parties' judgment of divorce shall be a Qualified Domestic Relations Order</u> as defined by the Retirement Equity Act of 1984, as from time to time amended.  [Ex-Wife's] equitable interest in Husband's pension is hereby declared to be fifty percent (50%) of the "marital share" of said pension benefit, the marital share being that fraction of the benefit whose numerator shall be the number of months of the parties' marriage during which the benefits were accumulated, which number shall be determined as of the date of this Agreement, and whose denominator shall be the total number of months during which the benefits were accumulated prior to the time when the payment of such benefits shall commence. [Ex-Wife] shall receive fifty percent (50%) of the aforesaid marital share of any benefits made from the pension to the Husband <u>including any death benefits</u> if, as and when such payments are made.

---

[5] Among other things, the parties agreed that they would keep their vehicles titled in their respective names and that they had divided equally their bank accounts. The Agreement provided that Ex-Wife would transfer and assign all her rights, title, and interest in the marital home to Husband, subject to an existing mortgage.  Husband was to be solely responsible for payment of the mortgage and other bills with respect to that property and would be entitled to the proceeds of any future sale of the property.  The Agreement also provided that Ex-Wife would convey to Husband her interest in a boat and a trailer that the couple owned.  Among other things, they also agreed to share joint legal custody of their children, with Husband having physical custody of one son and Ex-Wife having physical custody of their other two children.  Husband agreed to pay child support to Ex-Wife.

(emphasis added.) Thus, the Agreement implied that Husband's retirement plan was regulated by ERISA, although it was in fact exempt from ERISA as a government-sponsored plan, and stated that the judgment of divorce itself would serve as a QDRO. The Agreement generally provided that the parties waived any other claims from the date of the marriage to the date of the Agreement and specifically waived any claims under FL §§8-201 through 8-205 governing the allocation of marital property in divorce.

On August 3, 1998, the judgment of absolute divorce was entered by the Circuit Court for Frederick County. The judgment provided that the terms of the Agreement would be incorporated, but not merged, into that judgment. Neither Husband nor Ex-Wife obtained a QDRO for submission to MCPS. (Current counsel for both parties appear to agree that, contrary to the statement in the Agreement, the judgment of divorce itself cannot serve as a QDRO).

Nearly two years later, on June 25, 2000, Husband married Petitioner Lori A. Robinette ("Wife"). Husband subsequently named Wife as the beneficiary of record for his pension with the MCPS Employee and Retiree Service Center. He remained employed with MCPS until his death on October 2, 2009. Wife was named as the personal representative of Husband's estate. In December 2009, Wife received an initial payment of $4,112.46 from the pension plan; the future monthly benefit was calculated to be $2,056.23.[6]

---

[6] Although the record in this case is not entirely clear on the nature of this monthly payment, it appears likely to be a pre-retirement survivor annuity available under the

(continued...)

On May 12, 2010, Ex-Wife applied to the pension plan for a portion of Husband's death benefits under the retirement plan pursuant to the Agreement. Because the pension plan had never received a QDRO indicating that Ex-Wife was a beneficiary of Husband's death benefits, it rejected Ex-Wife's request for a portion of the benefits.

*The Lawsuit*

On January 20, 2011, Ex-Wife filed a complaint in the Circuit Court for Frederick County against Wife in which she alleged that Wife had been unjustly enriched in receiving the entire pension and death benefits. Ex-Wife requested an accounting of those benefits, and payment to Ex-Wife of a portion of those benefits. In September 2011, Ex-Wife amended her complaint to add a second count, alleging that Husband had undertaken a contractual obligation to transfer a portion of his pension and death benefits to Ex-Wife and requesting imposition of a constructive trust on a portion of the pension and death benefits that had been received by Wife.

In October 2011, the parties agreed that there was no dispute as to any material fact, stipulated to the essential facts in the case, and filed cross-motions for summary judgment. The parties also stipulated that, should the Circuit Court determine that Ex-Wife was entitled

[6] (...continued)
retirement plan to the spouse of a plan member when the plan member dies prior to retirement. *See* Montgomery County Public Schools, *Understanding Your Retirement - Employees' Retirement Pension System* (October 2013), http://www.montgomeryschoolsmd. org/uploadedFiles/departments/ersc/employees/retirement-planning/understanding _your_retirement.pdf (last visited on June 26, 2014).

to part of the death benefits, her portion of the $2,056.23 monthly payment would be $606.59.[7] The Circuit Court held a hearing on November 17, 2011, and took the motions under advisement.

On January 4, 2012, the Circuit Court entered summary judgment in favor of Ex-Wife. Although the court recognized that Wife had done no wrong, it explained that it would be inequitable for Wife to retain the proceeds of the pension plan, because she "is receiving a windfall of Ex-Wife's portion of the pension plan." The court concluded that "[Ex-Wife] has a sufficiently higher equitable call to the pension proceeds." The court ordered that Wife account for the pension and death benefits that she had already received and granted Ex-Wife a constructive trust in a portion of those benefits. The Circuit Court also indicated that it would approve a posthumous "QDRO" to be filed with the retirement plan with respect to future benefits. The QDRO was subsequently issued and filed with the retirement plan.[8] We were advised by counsel at oral argument that the pension plan currently pays Ex-Wife the stipulated portion of the monthly benefits.

Wife appealed the Circuit Court decision to the Court of Special Appeals.

---

[7] The parties calculated Ex-Wife's portion of the monthly payment using the "Bangs Formula" described in *Bangs v. Bangs*, 59 Md. App. 350, 356, 475 A.2d 1214 (1984), and incorporated in paragraph 8 of the Agreement. As a general rule, that formula involves dividing the total months of the marriage during the spouse's employment by the total months of the spouse's employment credited toward retirement benefits and dividing that fraction in half. The result of that calculation would then be multiplied against the monthly pension benefit to determine the amount of the ex-spouse's share of a monthly retirement benefit. *See* C. Callahan & T. Ries, Fader's Maryland Family Law (2012) §12-14[c][1].

[8] The record before us does not contain a copy of that order.

8

*The Appeal*

On appeal, the Court of Special Appeals affirmed the judgment of the Circuit Court. 212 Md. App. 76, 66 A.3d 1093 (2013). The intermediate appellate court first held that the Circuit Court had acted within its authority under State law in granting a posthumous QDRO. 212 Md. App. at 115.[9] The court further held that the Circuit Court properly imposed a constructive trust. *Id*. at 116. The court explained that there are exceptions to a long-standing rule that "a claim of unjust enrichment… 'may not be brought where the subject matter of the claim is covered by the express contract between the parties.'" *Id*. at 126. It concluded that there was sufficient evidence to support the Circuit Court's assessment that the equities favored the imposition of a constructive trust, in light of the mutual intent of Husband and Ex-Wife expressed in the Agreement that Ex-Wife would receive a portion of the benefits and in light of various concessions and waivers made by Ex-Wife in favor of Husband in that Agreement. *Id.*

---

[9] Wife had primarily challenged the issuance of the posthumous QDRO in her brief to the Court of Special Appeals on the ground that it violated ERISA. However, she later conceded that Husband's pension plan is a government plan exempt from ERISA. Although the Court of Special Appeals engaged in an extended discussion of whether a court may issue a posthumous QDRO under ERISA, it ultimately concluded that the question was irrelevant, as ERISA did not preempt State law in these circumstances. We express no opinion concerning the substance of the Court of Special Appeals' discussion of QDROs under ERISA.

Wife filed a petition for certiorari in this Court, which we granted to consider the validity of the action taken by the Circuit Court.[10]

## Discussion

*Standard of Review*

The parties agreed in the Circuit Court that there was no dispute of material fact and filed cross-motions for summary judgment. In resolving those motions, the Circuit Court decided the legal questions as to whether it had authority to grant a posthumous "QDRO" as to future benefits and to impose a constructive trust on benefits already paid. It also decided whether to exercise that authority – whether, in the context of the particular facts and circumstances of this case, one or both of those remedies was appropriate.

As with other legal questions that are resolved in a motion for summary judgment, we review the legal question as to the Circuit Court's authority without deference to the views of the Circuit Court or intermediate appellate court. *Mathews v. Cassidy Turley*, 435 Md. 584, 598, 80 A.3d 269 (2013). If we find that the Circuit Court had such authority, we review its exercise of that authority for abuse of discretion. *Harper v. Harper*, 294 Md. 54, 64, 448 A.2d 916 (1982) ("[T]he complex task of valuing and allocating retirement benefits

_____

[10] The precise issue(s) raised by Wife has been a bit of a moving target. Her petition for certiorari identified a single issue – whether the Circuit Court had improperly substituted its own equitable remedy for the remedy negotiated by the parties – and appeared to subsume both the posthumous QDRO and the constructive trust in that question. In Wife's brief, the question presented concerned only the constructive trust, but at oral argument Wife's counsel advised that the posthumous QDRO remained at issue. In any event, we find no error in either aspect of the Circuit Court's decision.

10

between former spouses [is placed] within the discretion of the trial court."); *Starleper v. Hamilton*, 106 Md. App. 632, 640, 666 A.2d 867 (1995) (Wilner, C.J.) (decision whether to impose a constructive trust rests in the discretion of the court).

### *Issuance of a Posthumous "QDRO" with Respect to Future Benefits*

As indicated above, after concluding that Husband's retirement plan was not governed by ERISA, the Court of Special Appeals held that the Circuit Court's posthumous order – which the Circuit Court referred to as a "QDRO" and which the intermediate appellate court called a "Domestic Relations Order" – was valid under Maryland law. That appears to be a correct reading of Maryland law. *See Prince George's County Police Pension Plan v. Burke*, 321 Md. 699, 584 A.2d 702 (1991) (trial court had authority to transfer interest in benefits from government retirement plan exempt from ERISA by means of QDRO-type order); *cf.* Maryland Code, State Personnel & Pensions Article, §21-502(a)(2) (court of competent jurisdiction may expressly order assignment of a retirement plan benefit under a divorce decree or court-approved property settlement agreement). Wife does not appear to quarrel with that holding as a matter of Maryland law. Rather, Wife attempts to argue that the Agreement itself requires any order concerning the allocation of future benefits under Husband's retirement plan to be assessed under federal law.

Wife has conceded, at least since the case was before the Court of Special Appeals, that Husband's pension plan is not governed by ERISA. Wife, however, now argues that ERISA still applies to the allocation of Husband's pension benefits because, as she construes

11

the Agreement, Husband and Ex-Wife agreed that ERISA should apply. She asserts that the reference to the Retirement Equity Act of 1984 – which amended ERISA – in paragraph 8 of the Agreement, read together with various other standard clauses in the Agreement, should be interpreted to mean that the parties intended their agreement concerning Husband's pension benefits to be governed by ERISA, even though the retirement plan itself is not.

This may be a creative argument, but it is neither internally consistent nor substantively meritorious. For example, while reading the statutory reference in paragraph 8 literally to incorporate the requirements of ERISA into the Agreement, Wife would ignore the language of the same sentence that states that the divorce judgment alone will constitute a QDRO – which does not suffice under ERISA. If Wife's view were correct, paragraph 8 self-destructed by its own terms. That may be to Wife's advantage in the current litigation, but it does not give a sensible meaning to the Agreement, or to paragraph 8 in particular, which clearly accords Ex-Wife a 50 percent "equitable interest" in Husband's pension benefits. Eliminating that equitable interest as a result of contradictory clauses in the paragraph concerning an inapplicable federal statute (ERISA) would also be at odds with the parties' intent, expressed in paragraph 23 ("Severability") of the Agreement, that a provision of the Agreement should remain in force even if some provisions of the Agreement are found

12

to be unenforceable or void. It provides no basis for overturning the Circuit Court's order.[11]

### *Imposition of a Constructive Trust with Respect to Benefits Already Paid*

"A constructive trust is the remedy employed by a court ... to convert the holder of legal title to property into a trustee for one who in good conscience should reap the benefits ... of [the] property." *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254 (1980).[12] Maryland courts have used the device in a variety of circumstances involving otherwise unenforceable agreements to share property. *See, e.g., O'Connor v. Estevez,* 182 Md. 541, 35 A.2d 148 (1943) (constructive trust imposed on one-half of farm titled in name of decedent to give effect to unenforceable parol agreement between decedent and couple who operated farm for the mutual benefit of the decedent and the couple); *Springer v. Springer*, 144 Md. 465, 125 A. 162 (1924) (constructive trust imposed on property in favor of couple who had funded purchase of property even though it was titled in name of their son when there was a mutual understanding that he held the property for the family's benefit); *Porter*

---

[11] Wife's counsel also pointed out that, had Ex-Wife been listed as the sole beneficiary for Husband's retirement plan benefits at the time of his death, Ex-Wife apparently would have qualified only for a lump sum payment upon Husband's death and not the annuity that is available to a surviving spouse and that was chosen by Wife. However, at the time the Circuit Court had issued its order, Wife had already elected the annuity option with the retirement plan; the parties stipulated to the appropriate allocation of those benefits if the Court found that Ex-Wife was entitled to a portion of the retirement plan benefits despite the failure to obtain a QDRO-type order earlier. The retirement plan has apparently accepted that allocation. Wife does not cite any legal basis for directing the plan to do otherwise.

[12] Prior to the consolidation of law and equity, the equity courts developed the remedy of constructive trust parallel to the concept of quasi-contract applied in the law courts to avoid unjust enrichment. The distinction between the two remedies is "procedural rather than substantive." 5 Scott on Trusts (1989) §461.

13

*v. Zuromski*, 195 Md. App. 361, 6 A.3d 372 (2010) (in a case involving the former joint residence of an unmarried couple that was titled solely in the man's name, a constructive trust was properly imposed on the property in favor of the woman, in light of her contributions to the purchase and maintenance of the property and the man's past representation that her name would be placed on the title).

A constructive trust may also be used to give effect to a provision in a separation agreement when necessary to avoid an inequity. An apt example is found in *Starleper v. Hamilton*, 106 Md. App. 632, 666 A.2d 867 (1995). In that case, a divorcing couple entered into a separation agreement in which the husband agreed to keep in effect a life insurance policy for the benefit of their son. The husband remarried and later named his second wife as the primary beneficiary on the policy, contrary to the separation agreement. The second wife was unaware of the provision concerning the insurance policy in the separation agreement. After the husband died and the second wife received the proceeds of the insurance policy, the first wife sought imposition of a constructive trust on the proceeds paid to the second wife, alleging that the second wife had been unjustly enriched.

The Circuit Court declined to impose a constructive trust, reasoning that the second wife had committed no wrongdoing. On appeal, the Court of Special Appeals vacated that judgment. Although it acknowledged that a constructive trust is an extraordinary remedy, the court stated that the imposition of such a trust is not contingent solely on a finding that the holder of the property "has committed some impropriety, but may rest as well upon a

14

finding of unjust enrichment arising from other circumstances." 106 Md. App. at 638.[13] The intermediate appellate court noted that courts in other states had employed constructive trusts in similar circumstances as a means of enforcing agreements to maintain insurance for designated beneficiaries. The court observed that, because a constructive trust is an equitable remedy, a court must consider all the relevant circumstances in determining whether to exercise its discretion to adopt that remedy. *Id*. at 640. It remanded the case to the trial court to consider whether, under all the circumstances, it would be inequitable for the second wife to retain the proceeds of the policy and whether the first wife and her son had a higher equitable call on those proceeds by virtue of the separation agreement. *Id.*

While we are not aware of a reported decision in Maryland concerning the imposition of a constructive trust in a case involving benefits from a retirement plan exempt from ERISA, courts in several other states have employed constructive trusts in similar circumstances to give effect to a provision governing the distribution of pension and death benefits in a separation agreement. For example, in *Fischbach v. Mercuri,* 919 N.E.2d 804 (Ohio App. 2009), a couple's separation agreement provided that the wife would receive a portion of the retirement benefits that the husband would be entitled to receive from the state

---

[13] *See also Wimmer,* 287 Md. at 668 ("The remedy [of a constructive trust] is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or *where the circumstances render it inequitable for the party holding the title to retain it.*"); *Springer*, 144 Md. at 480 ("…one 'who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under *any other such circumstances as render it inequitable for him to retain it,* is in equity regarded as the trustee of the party who ... is equitably entitled to the property.'").

teachers retirement system. The husband remarried and died before his retirement without properly designating a beneficiary; the retirement plan applied a state statute that designated the decedent's spouse – in that case, the second wife – as primary beneficiary. The first wife brought an action against the second wife for her portion of the monthly survivor benefits. The Ohio intermediate appellate court held that the second wife's receipt of the entire survivor benefit was "the inequitable result of [the husband's] wrongful act (or omission to act), and the imposition of constructive trust is an appropriate equitable remedy." 919 N.E.2d. at 815. *See also Dayton v. Dayton*, 2005 WL 1301390, at *1 (Ohio App. 2005) (concluding that the trial court erred in refusing to impose a constructive trust on the pension and survivor benefits received by a second wife contrary to a separation agreement between her deceased husband and his first wife).

The Wisconsin Supreme Court also held that an imposition of a constructive trust was appropriate to give effect to the terms of a separation agreement governing the distribution of retirement benefits from a state employee retirement system. In *Sulzer v. Diedrich*, 664 N.W.2d 641 (Wis. 2003), a divorcing couple agreed to split the husband's retirement plan benefits as part of their separation agreement, an agreement incorporated in certain court orders. The husband remarried and designated his second wife as his beneficiary. After the husband died, the first wife sought to have a portion of the benefits paid to her, but the retirement system declined to honor the court orders because Wisconsin state law did not authorize a "QDRO" to allocate retirement benefits at the time of the husband's death. The

16

state supreme court held that imposition of a constructive trust against a portion of the retirement benefits received by the second wife was appropriate. The court stated: "Here, there is no dispute as to the intent of the parties to divide the value of pensions equally as of the time of the divorce. That they were not able to identify a legal mechanism at the time was unfortunate, but this does not preclude the circuit court from now imposing a constructive trust to accomplish their intent." 664 N.W.2d at 647. *See also Smithberg v. Illinois Municipal Retirement Fund*, 735 N.E.2d 560 (Ill. 2000) (affirming that trial court had equitable power to award first wife pension death benefits following the death of the husband who had designated his second wife as the beneficiary of his municipal pension plan, contrary to the understanding in his separation agreement with his first wife to designate the first wife as his beneficiary); *cf. Wing v. Parchman*, 2006 WL 940296, at *1 (Tenn. App. 2006) (affirming trial court's imposition of a constructive trust, for the benefit of the deceased's first wife, on the pension benefits that the deceased's daughter received as a designated beneficiary of the deceased's pension plan); *but cf. Seavey v. Long*, 696 A.2d 102 (N.J. App. 1997) (imposition of constructive trust not appropriate when benefits received by second wife were not pension death benefits, but a statutory widow's pension contingent on the widow's satisfaction of certain statutory conditions, including that she not have entered into another marriage or domestic partnership).[14]

_____

[14] As the Court of Special Appeals noted in its opinion, 212 Md. App. at 122-24, it is also apparently well-established in the bankruptcy courts that, when a debtor fails to turn

(continued...)

17

We conclude that a circuit court has authority to impose a constructive trust on retirement benefits received by a surviving spouse when the decedent promised a portion of those benefits to a former spouse in circumstances that give the former spouse a "higher equitable call" to the promised benefits.

In this case, Wife acknowledges that imposition of a constructive trust on a portion of Husband's retirement plan benefits does not require a finding of wrongdoing on her part. Wife, however, suggests that, because Ex-Wife did not take any action to obtain a QDRO prior to Husband's death, there is no inequity in these circumstances.[15] However, it is clear from the Agreement that there was a mutual understanding that Ex-Wife had a 50 percent interest in the portion of Husband's retirement benefits that constituted marital property. The

---

[14] (...continued)
over property divided under a domestic relations court order, that property may be subject to a constructive trust; and that a pension benefit awarded to a former spouse does not qualify as a dischargeable debt in the debtor's bankruptcy proceeding. *See*, *e.g.*, *McGraw v. McGraw*, 176 B.R. 149 (Bankr. S.D. Ohio 1994); *Brown v. Pitzer*, 249 B.R. 303 (Bankr. S.D. Ind. 2000); *In re. Combs*, 435 B.R. 467 (Bankr. E.D. Mich. 2010).

[15] Wife also argues that the Circuit Court should not have imposed a constructive trust because Ex-Wife had a "contractual remedy." She invokes the principle that an equitable claim cannot be asserted when the claim is covered by an express contract between the parties. *See County Commissioners of Caroline County v. J. Ronald Dashiell & Sons, Inc.*, 358 Md. 83, 100-1, 747 A.2d 600 (2000) (quasi-contract claim could not be asserted when express contract fully covered parties' relationship). This appears to be a reiteration of her argument that the parties had agreed to incorporate ERISA into their separation agreement and that Wife was contractually required to obtain a ERISA-compliant QDRO prior to Husband's death to assert a claim to a portion of the benefits. For the reasons stated in the prior section of this opinion, this argument is without merit. When asked at oral argument what alternative remedy Ex-Wife actually has, Wife's counsel suggested that Ex-Wife may have a legal malpractice claim against the counsel who represented her during her divorce 16 years ago.

Agreement purported to be self-executing and did not make Ex-Wife's entitlement contingent on her contacting the retirement plan. While the Agreement did not require the Husband to take specific action with respect to the retirement plan, his later action substituting Wife as the beneficiary was contrary to his Agreement with Ex-Wife. Whether he intended to undermine the Agreement or acted without malevolent intent, the effect was the same and the benefits of his retirement plan that he had agreed belonged to Ex-Wife were paid instead to Wife.

Husband and Ex-Wife agreed that Ex-Wife would be entitled to a portion of Husband's pension benefit that accrued during their 17-year marriage. The Circuit Court could reasonably conclude that it would be inequitable for Wife to keep the entirety of those pension benefits. Accordingly, it was within the court's discretion to impose a constructive trust in favor of Ex-Wife on a portion of the benefits already received by Wife.

## Conclusion

For the reasons set forth above, the Circuit Court had authority (1) to issue a posthumous order directing the retirement plan to allocate a portion of the Husband's death benefit to Ex-Wife and (2) to impose a constructive trust on a portion of those benefits already received by Wife. In the circumstances of this case, the Circuit Court did not abuse its discretion in taking those actions.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

19