*Milton Everett Jackson v. Gayle Ann Sollie f/k/a Gayle S. Jackson*, No. 62, September Term 2015, Opinion by Greene, J.

**FAMILY LAW — DIVORCE — MARITAL PROPERTY**

Maryland is preempted by federal law from directly dividing Social Security benefits or indirectly dividing those benefits by way of an offset. This prohibition also prevents a judge from offsetting the hypothetical value of Social Security benefits within a CSRS pension when determining the distribution of marital property in a divorce proceeding.

Based upon the evidence presented to the court, when determining whether to grant a monetary award to adjust the equities and rights of the parties in marital property, a trial judge is required to consider the parties' actual or anticipated Social Security benefits as a relevant factor under Md. Code (1984, 2012 Repl. Vol.), § 8-205(b) of the Family Law Article.

Circuit Court for Howard County
Case No. 13-C-14-101240
Argued: February 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 62
September Term, 2015

_____

MILTON EVERETT JACKSON

v.

GAYLE ANN SOLLIE F/K/A
GAYLE S. JACKSON

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by Greene, J.
Watts and Hotten, JJ., dissent.

_____

Filed: July 19, 2016

*Battaglia, J., now retired, participated in the hearing
and conference of this case while an active member
of this Court; after being recalled pursuant to the
Constitution, Article IV, Section 3A, she also
participated in the decision and adoption of this
opinion.

In this case, we address whether a trial judge has the authority to consider Social Security benefits, and whether a judge may offset those benefits against the marital portion of a Civil Service Retirement System ("CSRS") pension[1] when determining the division of marital property.

Milton E. Jackson ("Jackson") filed for an absolute divorce[2] from his spouse, Gayle S. Jackson ("Sollie").[3] Concerning the distribution of marital property, the parties were unable to reach a consensus as to how to divide their respective pension plans. As an older federal employee, Jackson is a participant in the CSRS pension program.[4] Upon retirement, he will be entitled to a pension, but only limited Social Security benefits. Sollie, however,

---

[1] In 1920, Congress enacted the Civil Service Retirement Act, which established the CSRS for federal employees. A defining characteristic of the CSRS program is that the employee does not participate in the Social Security program. Because the employer does not withhold Social Security taxes from the CSRS employee's salary, generally, the employee, upon retirement, will receive a larger pension in lieu of Social Security benefits. The employee may qualify for Social Security benefits, because of previous employment in the private sector. As will be discussed later, those benefits are subject to penalties under federal statutory provisions.

[2] At the time Jackson filed for an absolute divorce, he was sixty-one years old, and Sollie was fifty-eight years old.

[3] The Circuit Court granted Mrs. Jackson's request to restore her maiden name: Gayle Ann Sollie.

[4] The CSRS was replaced by the Federal Employees Retirement System ("FERS") "for Federal employees who first entered covered service on and after January 1, 1987." *CSRS Information*, U.S. OFFICE OF PERS. MGMT, www.opm.gov/retirement-services/csrs-information [https://perma.cc/KQZ5-9GAV] (last visited July 15, 2016). Unlike the CSRS, FERS employees contribute to Social Security, and are entitled to those benefits upon retirement.

participates in the Maryland State Retirement Service ("MSRS") plan, and will be entitled to a pension as well as full Social Security benefits.

Jackson acknowledges that generally, under Maryland law, in a divorce proceeding, retirement plans are considered marital property subject to division, and Social Security benefits are considered non-marital property, which are not subject to division. He argues, however, that the marital portion of the CSRS pension should be reduced in order to reflect an offset. The offset, he states, is an *implicit* embedded Social Security element representing the amount of Social Security benefits Jackson would have been entitled to had he not participated in the CSRS. By accounting for the offset, Sollie's share of the marital portion of the CSRS pension would be reduced, and, in Jackson's opinion, this would result in a more equitable distribution of the marital assets.

The Circuit Court rejected Jackson's offset argument, and ordered the retirement plans be divided so that each party would receive 50% of the marital share of the other party's retirement plan. For the reasons explained below, we agree with the Circuit Court on this point, and hold that, under the doctrine of federal preemption, a trial judge may not offset the value of hypothetical Social Security benefits against the marital share of a CSRS pension when dividing marital assets in a divorce proceeding. We, however, vacate the judgment of the Circuit Court, and remand the case for that court to take into consideration the parties' anticipated Social Security benefits as a relevant factor under Md. Code (1984, 2012 Repl. Vol.), § 8-205(b) of the Family Law Article ("FL").

2

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties were married on June 21, 1980. By this time, each party was already employed and contributing to their respective pension plans. After thirty-five years of marriage, Petitioner filed a complaint for an absolute divorce. Although the parties agreed to divide other marital assets equally, they were unable to reach a consensus as to how to dispose of their respective pension plans. On June 25, 2015, the parties appeared before the Circuit Court for Howard County for a trial. The trial judge bifurcated the case, and heard the grounds for divorce first, followed by testimony concerning the disposition of Jackson's CSRS pension, and Sollie's MSRS pension. In the latter proceeding, the trial judge heard testimony from Jackson, his expert witness, and Sollie's expert witness.

Jackson testified about his employment history, including twelve years in the private sector and over thirty-eight years with the Social Security Administration where he remains a full-time employee. As a federal employee, Jackson enrolled in the CSRS, and began making contributions on January 18, 1977.[5] He explained that, as a CSRS employee, he does not qualify for Social Security benefits, because his employer does not withhold Social Security taxes from his salary. He further explained that he would be eligible to receive limited Social Security benefits, because he previously worked in the private sector, and contributed to the program.

---

[5] In 1984, Jackson had the option to switch to the FERS, but declined to do so.

3

Jackson explained that when an individual, such as himself, is eligible for Social Security benefits as well as a pension from a position that did not contribute to the Social Security program, the individual will be adversely impacted by two statutory provisions enacted by Congress. First, under the Windfall Elimination Provision ("WEP"), a special formula is used to reduce the amount of Social Security benefits that the individual is entitled to receive. *Windfall Elimination Provision*, SOCIAL SECURITY ADMIN. (Jan. 2016), www.ssa.gov/pubs/EN-05-10045.pdf [https://perma.cc/DX2K-WF4X ]. If Jackson were to receive Social Security benefits starting at age 66, the WEP would reduce his estimated benefits of $381 per month to $131 per month. Second, under the Government Pension Offset ("GPO"), there is a similar reduction in the Social Security spousal or survivor benefits an individual, including a former spouse, may receive. *Government Pension Offset*, SOCIAL SECURITY ADMIN. (July 2015), www.ssa.gov/pubs/EN-05-10007.pdf [https://perma.cc/Y7W3-K5D6].

Jackson called an expert witness in the areas of the CSRS and pensions to testify on his behalf. The expert explained that a portion of Jackson's salary is withheld to fund the CSRS instead of Social Security. Therefore, in the expert's opinion, the Circuit Court should account for the embedded Social Security element that allegedly exists within the CSRS pension:

> [T]he Social Security element means the amount of Social Security that [Jackson] would have had if he had been a private company employee or participated in the FERS program. So if you set that aside and allocate [the value of the embedded element] to Mr. Jackson and then divide the balance of

4

that, the remainder, by the marital fraction, so in essence attributing some of Mr. Jackson's CSRS Pension to Social Security, then this, in my opinion, provides an equitable distribution of the retirement pensions.

In essence, because Social Security benefits are non-marital property, and thus, not subject to division by a court in a divorce proceeding, the expert proposed that the embedded Social Security element should be similarly treated as non-marital. Otherwise, according to the expert, an inequitable division would occur, because a portion of that embedded element would be distributed to Sollie.

Although Sollie did not testify, she did call an expert witness in the areas of pension, pension valuations, and Social Security benefits. The expert testified about Sollie's employment history, and explained that Sollie has contributed to the MSRS for over twenty-eight years, beginning on August 1, 1986, as well as to Social Security. As a result, upon retirement, Sollie will be entitled to a pension as well as Social Security benefits. Sollie's expert disagreed with the pension valuation calculations made by Jackson's expert. The expert explained that any attempt to value the hypothetical Social Security element would be speculative, because the element does not exist within the CSRS. The CSRS and Social Security are separate and distinct programs with distinguishing characteristics. Additionally, the expert explained that state courts are federally preempted from interfering with Social Security, and that Jackson was trying to circumvent Congressional intent by suggesting that the trial court could offset the value of Social Security benefits. Congressional intent is expressed by the interplay between the CSRS, the WEP, and the GPO: Jackson, as a CSRS

5

employee, is entitled to reduced Social Security benefits.

On June 30, 2015, the Circuit Court entered its judgment granting Jackson an absolute divorce. On the issue of how to equitably divide the retirement plans, in its memorandum opinion, the Circuit Court stated:

> It is not the role of the Court to make things equal, only to divide marital property equitably . . . . Each party's retirement shall be divided in accordance with the Bangs Formula, giving each party 50% of the marital share of the other party's retirement, with the marital share being defined as the number of months of the employee's qualifying participation in the plan from June 21, 1980 and June 25, 2015 and the denominator being the total number of months of the employee's qualifying participation in the plan.

On July 16, 2015, Jackson filed a notice of appeal in the Court of Special Appeals, and, on August 25, 2015, he filed a petition for writ of certiorari with this Court. Before the commencement of proceedings in the intermediate appellate court, we granted *certiorari* to answer the following question:

> Should Maryland adopt the [position of a] majority of states and require a trial judge to consider whether social security benefits should be offset against the marital portion of [a] CSRS pension upon dividing assets as a result of [a] divorce?

*Jackson v. Sollie*, 445 Md. 19, 123 A.3d 1005 (2015). For the reasons stated below, we shall answer twofold: (1) in a divorce proceeding, a trial judge is preempted by federal law from dividing Social Security benefits (including its hypothetical value) directly or by way of an indirect offset when determining the equitable distribution of marital property; (2) on the basis of the evidence presented, a judge must consider a party's actual or anticipated Social Security benefits as a relevant factor under FL § 8-205(b) when determining whether to grant

6

a monetary award to adjust the equities and rights of the parties concerning marital property. "A court that grants a divorce has authority to determine which property is marital property, to assess its value, to order the transfer of ownership of certain categories of property, and to grant a monetary award to adjust 'the equities and rights of the parties.'" *Robinette v. Hunsecker*, 439 Md. 243, 245–46, 96 A.3d 94, 95 (2014) (quoting FL §§ 8-201 through 8-205). Accordingly, we vacate the judgment of the Circuit Court, and remand this case for the judge's consideration of the parties' anticipated Social Security benefits in determining whether it would be equitable to enter a monetary award.

## STANDARD OF REVIEW

The question before this Court is a question of law as it concerns the limits of a trial court's authority in a divorce proceeding. "As with all questions of law, we review this matter *de novo*." *Toms v. Calvary Assembly of God, Inc.*, 446 Md. 543, 551, 132 A.3d 866, 870–71 (2016) (citing *State v. Johnson*, 367 Md. 418, 424, 788 A.2d 628, 631 (2002)).

## DISCUSSION

We are asked to address an issue of first impression in Maryland, and to determine whether a trial court, in a divorce proceeding, may consider hypothetical Social Security benefits, allegedly located within the CSRS pension, and offset that amount when determining whether to make a monetary award in order to achieve an equitable distribution of marital property. First, we shall address whether a judge may offset the value of hypothetical Social Security benefits.

7

**Social Security and Federal Preemption**

We are guided by the United States Supreme Court on the issue of whether Maryland courts are federally preempted from indirectly dividing Social Security benefits by way of an offset. We know from *Flemming v. Nestor* that Social Security benefits are distinguished from annuities, and are not considered an accrued property right. 363 U.S. 603, 610, 80 S. Ct. 1367, 1372, 4 L. Ed. 2d 1435, 1444 (1960). "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands." *Id.* "It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Flemming*, 363 U.S. at 610, 80 S. Ct. at 1372, 4 L. Ed. 2d at 1443–44.

An analysis of the Social Security program as discussed in *Hisquierdo v. Hisquierdo* provides additional guidance. 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). At issue in *Hisquierdo* was a state court's power, in a divorce proceeding, to divide or offset the value of an expected interest in federal retirement benefits administered under the Railroad Retirement Act ("RRA"). The Supreme Court held that the statutory scheme enacted by Congress, which it analogized to the Social Security Act ("SSA"), preempted state courts from directly or indirectly interfering with the RRA benefits. *Hisquierdo*, 439 U.S. at 586, 588, 99 S. Ct. at 810–11, 59 L. Ed. 2d at 14. Under the RRA, an employee's spouse qualified for benefits, but any entitlement to those benefits terminated upon an absolute divorce.

8

*Hisquierdo*, 439 U.S. at 575, 99 S. Ct. at 805, 59 L. Ed. 2d at 7. Thus, any benefits derived from the RRA cannot be subject to division in a divorce proceeding. The Supreme Court acknowledged that "[t]he burden of marital dissolution may be particularly onerous for a spouse who, unlike respondent, has no expectation of receiving his or her own social security benefits[,]" but it further stated that Congressional action would be required to amend the statutory scheme. *Hisquierdo*, 439 U.S. at 590, 99 S. Ct. at 812, 59 L. Ed. 2d at 16.

The Supreme Court dedicated significant time comparing the statutory scheme of the RRA to the SSA, and discussing their similarities. "Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." *Hisquierdo*, 439 U.S. at 575, 99 S. Ct. at 805, 59 L. Ed. 2d at 7 (footnote omitted). Both programs have an anti-attachment provision to "prevent[] the vagaries of state law from disrupting the national scheme, and [to] guarantee[] a national uniformity that enhances the effectiveness of congressional policy." *Hisquierdo*, 439 U.S. at 584, 99 S. Ct. at 809–10, 59 L. Ed. 2d at 12. The Supreme Court noted that the RRA's anti-attachment provision evidenced Congressional intent to protect the employee's benefits from interference from state courts. Any diminution of those benefits to the intended employee-beneficiary would circumvent the Supremacy Clause of the United States Constitution and "frustrate[] the congressional objective." *Hisquierdo*, 439 U.S. at 585, 99 S. Ct. at 810, 59 L. Ed. 2d at 16. The Supreme Court further rejected the offset argument, because any indirect interference of the RRA benefits would similarly "upset the statutory

balance and impair [the employee]'s economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo*, 439 U.S. at 588–89, 99 S. Ct. at 811, 59 L. Ed. 2d at 15.

Jackson argues that *Hisquierdo* is distinguishable from the case *sub judice*, and he cites to other state appellate courts, including *Cornbleth v. Cornbleth*, 580 A.2d 369 (Pa. Super 1990) and *Kelly v. Kelly*, 9 P.3d 1046 (Ariz. 2000), *as amended* (Oct. 11, 2000), that have held that an indirect consideration of Social Security benefits does not tread on federal preemption grounds. Furthermore, Jackson cites to *Pleasant v. Pleasant*, 97 Md. App. 711, 720 n.3, 632 A.2d 202, 207 (1993), as giving credence to this trend of jurisdictions.[6]

## Social Security Act and the Civil Service Retirement Act

Because the issue before this Court involves two federal programs, we shall explore their characteristics.

In *Pleasant*, the Court of Special Appeals explained that "the Supremacy Clause of the United States Constitution precludes states from intervening in the allocation of social security benefits" and therefore "social security benefits may not be considered marital property or be subject to distribution in any manner in a divorce proceeding." 97 Md. App. at 719, 632 A.2d at 206. The intermediate appellate court correctly rested its decision on

---

[6] In *Pleasant*, the Court of Special Appeals stated: "In an appropriate case, of course, it may be that a court could consider the fact that a party is receiving, or will receive, social security benefits, as 'any other factor' in determining whether to make a monetary award." 97 Md. App. at 720 n.3, 632 A.2d at 207.

federal preemption grounds.  As part of the SSA, Congress enacted an anti-assignment and anti-legal process provision, which prevents state courts from directly interfering with Social Security benefits:

> The right of any person to any future payment under this subchapter *shall not be transferable or assignable*, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, *or other legal process*, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (2012) (emphasis added).  This provision prohibits a beneficiary from transferring or assigning his or her interest in Social Security benefits to another.[7]  "Like anti-attachment provisions generally . . . it ensures that the benefits actually reach the beneficiary.  It pre-empts all state law that stands in its way." *Hisquierdo*, 439 U.S. at 584, 99 S. Ct. at 809, 59 L. Ed. 2d at 12.

In 1975, Congress amended the SSA to include two narrow exceptions to the anti-assignment provision.  Under 42 U.S.C. § 659(a) (2012), a state court is permitted to withhold Social Security benefits in order "to enforce the legal obligation of the individual to provide child support or alimony."  Notably, in 1977, Congress further amended the SSA to clarify the definition of "alimony."  Alimony is narrowly defined as "periodic payments of funds for the support and maintenance of the spouse (or former spouse) of the individual . . . ." 42 U.S.C. § 659(i)(3)(A) (2012).  Congress expressly stated that alimony does not

---

[7] A former spouse may receive benefits based on his or her former spouse's Social Security benefits under 42 U.S.C. § 402(b) and (c) (2012).

11

include "any payment or transfer of property *or its value* by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii) (2012) (emphasis added). *See Depot v. Depot*, 893 A.2d 995, 999 (Me. 2006) ("Congress has specifically excluded any similar payment obligation arising from any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.") (internal quotation marks and citation omitted). Thus, Congress further delineated the boundaries of a state court's power to interfere with Social Security benefits. As explained in *In re Marriage of Crook*, 813 N.E.2d 198, 204 (Ill. 2004), "the amendment clarified Congress' intent that Social Security benefits remain nonassignable until Congress chooses to modify its position on this issue."

Notably, Congress reserves "[t]he right to alter, amend, or repeal any provision" of the SSA. 42 U.S.C. § 1304 (2012). Unlike a CSRS pension, Social Security benefits are not considered property, but instead are considered non-contractual benefits. *Flemming*, 363 U.S. at 610, 80 S. Ct. at 1372, 4 L. Ed. 2d at 1444. *See also Pleasant*, 97 Md. App. at 719, 632 A.2d at 206 (categorizing Social Security benefits as non-marital property, because the Supremacy Clause "precludes states from intervening in the allocation" of those benefits).

The Civil Service Retirement Act is substantively different than the SSA as reflected in its treatment by state courts. A defining characteristic is that under Maryland law,

12

retirement pensions, including the CSRS, are considered marital property subject to division in a divorce proceeding.

> Federal law permits state divorce courts to treat certain pension and retirement rights as marital property, 5 U.S.C.A. § 8345(j), and, correspondingly, Maryland has specifically authorized its trial courts to implement a monetary award by transferring a portion of a party's pension or retirement plan to his or her spouse.

*Heyda v. Heyda*, 94 Md. App. 91, 94, 615 A.2d 1218, 1219–20 (1992). *See* Md. Code (1984, 2012 Repl. Vol.), FL § 8-201(e)(1) (defining marital property as "the property, however titled, acquired by 1 or both parties during the marriage"); FL § 8-205(a)(1) and (a)(2) (stating a court may either grant a monetary award, or "transfer ownership of an interest in . . . a pension, retirement, profit sharing, or deferred compensation plan, from one party to either or both parties[,]" or both).

The treatment by Congress of the CSRS has been markedly different than that of the SSA. For instance, unlike the SSA, the CSRS does not contain an anti-assignment provision. The program was amended to allow the assignment of benefits to former spouses. 5 U.S.C. § 8345(j)(1) (2012). Furthermore, Congressional intent is clear in that a CSRS pensioner is not eligible for Social Security benefits. To reinforce this, any CSRS pensioner who derives Social Security benefits from another source will be subjected to penalties under the WEP and GPO, which will result in reduced benefits. Such a statutory structure prevents a "double dipping" of benefits, because a CSRS pension *substitutes* for Social Security benefits.

13

**Jurisdictional Split on the Issue of Federal Preemption**

Jackson argues that although state courts are preempted from directly dividing Social Security benefits as explained above, trial courts are not preempted from the *indirect* consideration of those benefits in a CSRS pension. He posits that it is permissible for a state court, first, to consider the value of the implicit embedded Social Security element, and, second, to offset that amount by removing that value from the marital portion of the pension prior to a judge's determination of how to equitably distribute the remaining marital portion. Without the offset, Jackson argues, Sollie will receive a portion of the embedded Social Security element within Jackson's CSRS pension. He argues that this is inequitable, because Sollie's Social Security benefits cannot be distributed to him.

Although this is an issue of first impression in Maryland, several jurisdictions have previously addressed it. There exists a sharp split, however, in their resolution of the issue. The highest appellate court in South Dakota explained:

> The U.S. Supreme Court has not specifically addressed whether a state court can indirectly offset or otherwise consider the parties' respective Social Security benefits in dividing marital property in a dissolution proceeding. However, several state courts look to the Court's decision in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), as instructing them that Social Security is not subject to an indirect adjustment through offset.
>
> * * *
>
> However, some courts allow an indirect offset . . . . Most courts utilize yet another, less restrictive approach. These courts disallow an offset but allow a general consideration of a party's anticipated social security benefits in the overall scheme when making a property division.

*Johnson v. Johnson*, 734 N.W.2d 801, 807–08 (S.D. 2007) (internal citations and

14

quotation marks omitted). *See also Forrester v. Forrester*, 953 A.2d 175, 181 (Del. 2008) ("Nine jurisdictions have determined that retirement plans that substitute for federal Social Security are subject to division as a marital asset. Four jurisdictions do not treat such plans as marital assets.") (footnotes omitted). Jackson argues that this Court should join with the jurisdictions that hold indirect consideration of Social Security benefits does not tread on federal preemption grounds. Sollie, however, argues that Maryland should join with state appellate courts that have refused to consider Social Security benefits in any manner because of federal preemption as explained in *Hisquierdo*.

Briefly, we examine the jurisdictional split. Jackson cites to cases where the appellate courts have distinguished *Hisquierdo*, because the consideration of an embedded Social Security element within a CSRS pension (or a pension that similarly precludes Social Security participation) does not involve the *direct* division of Social Security benefits. Thus, according to these jurisdictions, *Hisquierdo* is not violated by an indirect consideration, and equity is permitted to prevail, under state law, in the distribution of marital assets between divorcing parties. *See Johnson*, 734 N.W.2d at 808–09 ("[The consideration] recognizes and compensates for the inequity of including all of [one party's] CSRS benefits in the marital estate while [the other party's] social security benefits are entirely excluded."); *Depot*, 893 A.2d at 1001 ("A divorce court's consideration of a spouse's anticipated or actual Social Security benefit payments as a relevant factor . . . does not represent a transfer or assignment . . . in violation of the Social Security Act's anti-assignment provision.") (citing 42 U.S.C.

15

§ 407(a)); *Eickelberger v. Eickelberger*, 638 N.E.2d 130, 135 (Ohio App. 12 Dist. 1994) ("As a matter of public policy, a trial court should consider one spouse's Social Security benefits before that court divides the other spouse's entire public pension and retirement plan [and then it may order an offset].").

Cornbleth v. Cornbleth*, 580 A.2d 369 (Pa. Super. 1990) is the case most often cited for the proposition that indirect consideration does not run afoul of federal preemption. The case is factually analogous to the case *sub judice*, and, like Maryland, Pennsylvania is an equitable distribution jurisdiction. Pennsylvania's intermediate appellate court held that a trial judge could consider the value of the embedded Social Security element, and offset it by removing that value from the marital share of the CSRS pension prior to dividing the marital assets. The court devised a formula[8] to avoid the "inequity of positions" that would otherwise result between a CSRS pensioner and a Social Security participant. *Cornbleth*, 580 A.2d at 372. *See also Johnson*, 734 N.W.2d at 807–08 (identifying states that permit an indirect offset). "To the extent individuals with Social Security benefits enjoy an exemption of that 'asset' from equitable distribution we believe those individuals participating in the CSRS must, likewise, be so positioned." *Cornbleth*, 580 A.2d at 371. Arizona's highest

---

[8] The *Cornbleth* Court stated: "To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes." 580 A.2d at 372.

16

court adopted the *Cornbleth* formula, because "this situation compels an equitable response." *Kelly*, 9 P.3d at 1048–49. "[O]ur resolution merely attempts to place the parties in the position they would have been had both participated in social security." *Kelly*, 9 P.3d at 1048.

Sollie argues that Maryland should join with the jurisdictions that have held that state courts are preempted by federal law and *Hisquierdo* from considering Social Security, including its hypothetical value, directly or indirectly. *See Olson v. Olson*, 445 N.W.2d 1, 11 (N.D. 1989) (holding the Supremacy Clause prohibits state courts from distributing Social Security benefits directly or "us[ing it] as an offset in division of marital property"). It is Sollie's position that Social Security is not subject to valuation for purposes of an offset, which means that a court is precluded from considering its hypothetical value.

In Illinois, the highest appellate court explained that "*Hisquierdo* establishes two important points: Social Security benefits may not be divided directly or used as a basis for an offset during state dissolution proceedings." *Crook*, 813 N.E.2d at 204. The court discussed its rationale:

> Instructing a trial court to "consider" Social Security benefits . . . either causes an actual difference in the asset distribution or it does not. If it does not, then the "consideration" is essentially without meaning. If it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse to compensate for the anticipated difference. This works as an offset meant to equalize the property distribution. That this type of "consideration" amounts to an offset is recognized in the well-reasoned decisions from other state jurisdictions holding that under *Hisquierdo*, it is improper for a circuit court to consider Social Security benefits in equalizing a property distribution upon dissolution.

17

*See Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916 (1996); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *In re Marriage of Swan*, 301 Or. 167, 720 P.2d 747 (1986).

*Crook*, 813 N.E.2d at 205. That court went on to state:

> We are, however, fully aware of the potential inequities implicated by the federal preemption protection of one spouse's Social Security benefits. Nonetheless, *Hisquierdo* and the federal preemption doctrine compel our conclusion in this case. It remains a fact that it is not the province of this court—or of any state court—to interfere with the federal scheme, no matter how unfair it may appear to be . . . . Accordingly, it is up to Congress, and not the state courts, to correct any inequity in the federal system.

*Id.* at 205–06.

In *Olson*, North Dakota's highest appellate court analyzed the statutory scheme of the SSA, and, on federal preemption grounds, held "social security cannot be distributed or used as an offset in division of marital property." 445 N.W.2d at 11. In part, it relied on the language of the alimony exception to the SSA's anti-legal process provision, which allows for spousal support, but excludes "any payment or transfer of property or its value by an individual to . . . a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii) (2012). Pursuant to the statute, and *Hisquierdo*'s preemption analysis, the court reasoned that a trial judge may not create a hypothetical valuation and indirectly offset the embedded Social Security benefits within a pension that—like a CSRS pension—operates in lieu of Social Security. The *Olson* Court explained its rationale:

> Although marital property is generally under state control, it is clear to us that Congress wants social security to be exclusively federally controlled. Congress preempted state divorce laws when it enacted its own scheme of social security benefits for divorced spouses. The anti-assignment and anti-legal-process provisions in the Social Security Act, with their specific allowance for spousal support, also promote federal uniformity and preempt state law.
>
> We conclude that social security cannot be distributed or used as an offset in [the] division of marital property. To do so would conflict with the federal plan and would violate the Supremacy Clause of the United States Constitution.

445 N.W.2d at 11 (footnote omitted). It further stated that any perceived inequity in excluding the former wife's Social Security benefits from division, but permitting the former husband's pension to be distributable, was beyond the court's power to address. *Id*. at 11, 14. *See also Gray v. Gray*, 101 S.W.3d 816, 827 (Ark. 2003) ("Because the purposes of social security and the retirement plan are fundamentally different, they are not interchangeable.") (citation omitted).

Similarly, Florida's intermediate appellate court stated that federal law compelled the rejection of the offset argument. Referring to the amendment to the SSA's alimony exception, 42 U.S.C. § 659(a), it stated:

> This provision not only prohibits the outright division of social security benefits, it also prohibits the indirect division of benefits by awarding a nonparticipating spouse other marital property to compensate for his or her theoretical share of the participating spouse's benefits. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (any offset to a nonemployee spouse to compensate for nondivisible federal railroad benefits owned by an employed spouse impermissibly conflicted with federal law under the supremacy clause)[.]

*Johnson v. Johnson*, 726 So. 2d 393, 395–96 (Fla.App. 1 Dist. 1999) (citation omitted).

Courts representative of this trend hold that Congressional intent would be circumvented by permitting an indirect offset for pensions that operate as a substitute for Social Security.

**Maryland**

**A. Offsetting Social Security Benefits and the Issue of Federal Preemption**

We hold that, under the doctrine of federal preemption, a trial judge may not offset the value of hypothetical Social Security benefits against the marital share of a CSRS pension when dividing marital assets in a divorce proceeding. *See Bd. of Trustees v. City of Baltimore*, 317 Md. 72, 115, 562 A.2d 720, 740–41 (1989) (discussing the doctrine of federal preemption). *See also Dapp v. Dapp*, 211 Md. App. 323, 334, 65 A.3d 214, 221 (2013) (reversing a court order to enforce a marital settlement agreement, which "directly contravened the [federal] statute"). Social Security benefits are not marital property subject to division directly or indirectly.

The Supreme Court's preemption analysis in *Hisquierdo* is instructive. The SSA's statutory scheme precludes the division of Social Security benefits directly and indirectly by way of an offset. Congress has expressly sheltered the SSA from most state court action, and has specifically chosen not to do the same with the CSRS. "It is apparent that the noncontractual interest of an employee covered by the [Social Security] Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Flemming*, 363 U.S. at 610, 80 S. Ct. at 1372, 4 L. Ed. 2d at 1443–44. Congress enacted the SSA's anti-assignment provision, and, in 1975, it amended

the SSA to permit an exception for child support and alimony. 42 U.S.C. § 659(a) (1975). Although Social Security benefits are available for spousal support, the SSA explicitly excludes "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii) (2012). Although the Supreme Court in *Hisquierdo* did not expressly decide whether a court could indirectly divide Social Security benefits by way of an offset, it held that the structure of the RRA, which it likened to the structure of the SSA, prohibited the indirect offset of RRA benefits. It determined that "[a]n offsetting award [] would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo*, 439 U.S. at 588, 99 S. Ct. at 811, 59 L. Ed. 2d at 15.

We hold that, in a divorce proceeding, federal law and the Supreme Court's interpretations of the SSA bar an indirect offset of Social Security benefits (including its hypothetical value) within a CSRS pension. *See id.* (analogizing the statutory scheme of the RRA to the SSA); *Flemming*, 363 U.S. at 610–11, 80 S. Ct. at 1372–73, 4 L. Ed. 2d at 1444 (distinguishing Social Security benefits and explaining the difference in treatment between those benefits and annuities). In addition to being preempted by federal law on the issue of whether a court may offset Social Security benefits directly or indirectly, we also note that any valuation of hypothetical Social Security benefits allegedly located within the CSRS

21

pension would be speculative. Congress reserves "[t]he right to alter, amend, or repeal any provision" of the SSA. 42 U.S.C. § 1304 (2012). As such, the Supreme Court explained that Social Security benefits are not an accrued property right:

> That [Social Security] program was designed to function into the indefinite future, and its specific provisions rest on predications as to expected economic conditions which must inevitably prove less than wholly accurate, and on judgments and preferences as to the proper allocation of the Nation's resources which evolving economic and social conditions will of necessity in some degree modify.
>
> To engraft upon the Social Security system a concept of "accrued property rights" would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands. It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it "[t]he right to alter, amend, or repeal any provision" of the Act. That provision makes express what is implicit in the institutional needs of the program.

*Flemming*, 363 U.S. at 610–11, 80 S. Ct. at 1372–73, 4 L. Ed. 2d at 1444 (internal citations omitted). In the case *sub judice*, the trial judge was correct, on federal preemption grounds, to reject Jackson's request to offset the alleged embedded Social Security value in the CSRS pension.

## B. Preemption Doctrine Does Not Apply to the General Consideration of Social Security Benefits

In *Pleasant*, the Court of Special Appeals stated: "In an appropriate case, of course, it may be that a court could consider the fact that a party is receiving, or will receive, social security benefits, as 'any other factor' in determining whether to make a monetary award." 97 Md. App. at 720 n.3, 632 A.2d at 207. We agree. If the trial court determines from the

evidence that a party is receiving or will receive Social Security benefits, the court must consider those benefits as any other relevant factor, under FL § 8-205(b), in determining whether to grant a monetary award to adjust the equities and rights of the parties in marital property. *See Alston v. Alston*, 331 Md. 496, 509, 629 A.2d 70, 76 (1993) ("[A] trial judge must weigh the relevant factors in light of the legislative purpose, and then use his or her sound discretion to arrive at an award that is equitable and in accordance with the statute."). Although trial courts are preempted from subjecting Social Security benefits to valuation for the purposes of a direct or indirect offset of those benefits, federal law does not prevent courts from generally considering a party's participation in the Social Security program. A general consideration is permissible, because it does not involve the direct division of Social Security benefits or the indirect division of those benefits by way of an offset. *See Depot*, 893 A.2d at 1001 (stating that unlike an offset of Social Security benefits, a "divorce court's treatment of a spouse's anticipated or actual Social Security benefit payments as a factor relevant to the equitable distribution of property" does not violate the SSA's anti-assignment or anti-legal process provisions).

The Supreme Court of Washington held that the mere consideration of a party's Social Security benefits in a divorce proceeding did not constitute reversible error. *In re Marriage of Zahm*, 978 P.2d 498, 503 (Wash. 1999). *Hisquierdo*, it reasoned, was not violated, because "[t]he trial court neither computed a formal calculation of the value of petitioner's social security benefits nor offset a formal numerical valuation into the court's property division via

23

a specific counterbalancing property award to respondent." *Id.* at 502. Thus, a general consideration of Social Security benefits was proper in order to make a just and equitable distribution when dividing marital property.

> A fair and equitable division by a trial court does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties . . . . A trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property.

*Id.* at 501–02 (citations and quotation marks omitted). Importantly, that court stated that Social Security benefits could be considered by different statutory factors, including the determination of the parties' relative economic circumstances at the time of the divorce proceeding. *Id.* at 503. In another case, that same court explained why the preemption doctrine does not apply:

> Neither the letter nor purpose of § 407(a) of the Social Security Act compel courts to ignore expected annual Social Security benefit payments when undertaking their responsibility to equitably divide marital property. A divorce court's consideration of a spouse's anticipated or actual Social Security benefit payments as a relevant factor pursuant to [Maine's statutory scheme] does not represent a transfer or assignment of . . . in violation of the Social Security Act's anti-assignment provision. 42 U.S.C.A. § 407(a).
>
> Such consideration also does not violate § 407(a)'s prohibition against subjecting "the moneys paid or payable or rights existing under this subchapter . . . to execution, levy, attachment, garnishment, or *other legal process*, or to the operation of any bankruptcy or insolvency law." *Id.* (emphasis added). Since *Hisquierdo* was decided, the Supreme Court had occasion to revisit § 407(a), and it adopted a restrictive view of the meaning of "other legal process" as used in that section:
>
>> "[O]ther legal process" should be understood to be process much

24

like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). A divorce court's treatment of a spouse's anticipated or actual Social Security benefit payments as a factor relevant to the equitable distribution of property is neither a judicial process "much like the processes of execution, levy, attachment and garnishment," nor a mechanism by which control over Social Security benefits "passes from one person to another." *Id.*

The approach we approved in *Pongonis* [*v. Pongonis*, 606 A.2d 1055 (Me. 1992)] makes common sense. The court's role in property division is to accomplish a just division that takes into account "all relevant factors." Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual "economic circumstances of each spouse at the time the division of property is to become effective" . . . . Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property.

*Depot*, 893 A.2d at 1001–02 (internal citation and footnotes omitted). The court further reasoned that in order to avoid running afoul of preemption, when considering Social Security benefits, a trial judge "may not assign a lump sum value to Social Security benefits and either transfer or offset those benefits when exercising its [statutory] authority to divide marital property . . . ." *Id.* at 999.

Similarly, Iowa's highest appellate court acknowledged preemption to a degree: "state

courts are without power to directly or (by way of setoff) indirectly divide social security benefits in their formulation of economic terms and dissolution decrees." *In re Marriage of Boyer*, 538 N.W.2d 293, 295 (Iowa 1995). *Boyer* did not involve a CSRS-like pension, however, its facts mirror a typical divorce case where a trial judge must resolve numerous issues, including the distribution of multiple marital assets and alimony. Thus, its discussion on the general consideration of Social Security benefits is beneficial. There, although both parties qualified for Social Security benefits, the present value of the husband's anticipated benefits ($87,861.56) was much higher than the wife's anticipated benefits ($22,539.48). *Id.* at 294. "[A] state court is not required to pretend to be oblivious of the fact that one party expects benefits that will not be enjoyed by the other. This contrasting economic security can be weighed as a factor in fixing the economic terms of a dissolution decree." *Id.* at 293–94. The Supreme Court of Iowa explained:

> We see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement. **It should not invalidate a property division if a disproportionate expectation regarding social security benefits is acknowledged in the court's assessment of the equities** . . . . We do not think the federal preemption legislation requires state courts under these circumstances to purge so obvious an economic reality in its assessment.

*Id.* at 296 (emphasis added). *See also Johnson*, 734 N.W.2d at 809 ("[A] court may premise an unequal distribution of marital property on the fact that one party is likely to receive or, in this case, is receiving social security benefits.").

26

In Ohio, the highest appellate court also held that Social Security benefits could be considered along with other factors:

> We believe that allowing consideration of Social Security benefits in relation to all marital assets is the more reasoned approach. In order to equitably divide marital property, [the applicable state statutory scheme] directs the court to consider *all* relevant factors . . . . Among those factors listed . . . are the duration of the marriage [], the assets and liabilities of the parties [], and any other factor the court finds relevant and equitable []. Although a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution. Accordingly, we hold that a trial court, in seeking to make an equitable distribution of marital property, may consider the parties' future Social Security benefits in relation to all marital assets.

*Neville v. Neville*, 791 N.E.2d 434, 437 (Ohio 2003) (emphasis in original). We are persuaded by the rationale of *Zahm* and other jurisdictions representing this "less restrictive approach."[9]

*See Zahm*, 978 P.2d at 502–03 (citing jurisdictions that distinguish *Hisquierdo* and permit Social Security benefits to be considered as a relevant factor).

**C. General Consideration of Social Security Benefits Pursuant to Section 8-205(b) of the Family Law Article**

Maryland judges already consider Social Security benefits in narrow circumstances.[10]

---

[9] In a concurring opinion in *Olson*, it was argued that Social Security benefits "must [not] be entirely ignored in reaching an *equitable* division of property." 445 N.W.2d at 14 (Vande Walle, J., concurring) (emphasis in original). "Social Security benefits may be considered as part of the entire financial condition of the party receiving the benefits although they may not be divided or used as a direct offset by the trial court. In many instances the consideration of the benefits would appear in the context of consideration of a need for spousal support by the Social Security recipient." *Id.* at 15.

[10] *See Brewer v. Brewer*, 156 Md. App. 77, 101, 846 A.2d 1, 15 (2004) (holding that the trial

(continued...)

Based upon the evidence presented to the court, in determining whether to grant a monetary award to adjust the equities and rights of the parties in marital property, we hold that a trial court is required to consider the parties' actual or anticipated Social Security benefits as a relevant factor under FL § 8-205(b). General consideration does not conflict with federal law, because it is not a direct or indirect offset of Social Security benefits. *See Depot*, 893 A.2d at 999 (stating that a trial judge "may not assign a lump sum value to Social Security benefits and either transfer or offset those benefits when exercising its [statutory] authority to divide marital property"); *Zahm*, 978 P.2d at 502 (stating that preemption is not an issue if a trial judge does not "compute[] a formal calculation of the value of [one party]'s social security benefits []or offset a formal numerical valuation into the court's property division via a specific counterbalancing property award to [the other party]"). We agree that "[a] fair and equitable division by a trial court does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and

---

[10](...continued)
court erred in awarding alimony, because it failed to consider, as required by FL § 11–106(b)(11), the wife's eligibility to receive Social Security benefits beginning at age sixty-two); *Weidner v. Weidner*, 78 Md. App. 367, 374, 553 A.2d 263, 267 (1989) (stating that the appellee was entitled to enforce, in state court proceedings, a judgment for unpaid spousal support by seeking a lien on Social Security benefits, pursuant to FL § 10–101©, which defines "earnings" to include Social Security payments). *See also* Md. Code (1984, 2012 Repl. Vol.), FL § 12-201(b)(3)(x) (defining "actual income" to include Social Security benefits for the purposes of child support); *Tucker v. Tucker*, 156 Md. App. 484, 496, 847 A.2d 486, 492 (2004) (stating, in circumstances where a trial judge is permitted to deviate from the child support guidelines, a "court may, in exercising its discretion, adjust the parties' total child support obligation by reducing it in some measure to reflect the Social Security benefits the children are receiving").

an evaluation of the future needs of parties." *Zahm*, 978 P.2d at 501. Consideration of these

benefits under FL § 8-205(b) permits Maryland courts to determine a just and equitable

distribution of marital property.

In Maryland, a trial judge is required to operate within the confines of statutory

provisions as mandated by FL §§ 8-201 et seq. *See Ward v. Ward*, 52 Md. App. 336, 339, 449

A.2d 443, 445 (1982) (discussing the previous version of this statutory scheme and stating

"[t]he monetary award is designed to accomplish an equitable division of the marital property

in an indirect manner . . . . The clear intent is to counterbalance any unfairness that may result

from the actual distribution of property acquired during the marriage, strictly in accordance

with its title"). *See also Alston*, 331 Md. at 506, 629 A.2d at 75 (describing the function of

the monetary award as "a means for the adjustment of inequities that may result from

distribution of certain property in accordance with the dictates of title") (citation and quotation

marks omitted). A three-step process, pursuant to Md. Code (1984, 2012 Repl. Vol.), FL §§

8-203 to 8-205, is required when a judge determines whether to order a monetary award based

on marital property.[11] We have explained:

> The General Assembly has enacted a statutory scheme relating to property
> matters upon divorce, Maryland Code (1984, 1991 Repl. Vol.), §§ 8-201 to
> 8-205 of the Family Law Article. Pursuant to these provisions, the mechanism
> by which the spouses' property interests in "marital property" are to be adjusted
> is the "monetary award." Generally, the trial court does not transfer ownership
> of any particular piece of property, but instead undertakes a three-step process

---

[11] In FL § 8-201(e)(1), marital property is defined as "property, however titled, acquired by
1 or both parties during the marriage."

which may culminate in a monetary award. First, the trial court must determine which property is "marital property" subject to allocation, §§ 8-203 and 8-205(a). Next, the court must determine the value of the marital property, §§ 8-204 and 8-205(a). Finally, the court must consider various factors before fashioning any award, §§ 8-205(a) and (b).

*Alston*, 331 Md. at 498–500, 629 A.2d at 71–72 (footnotes omitted). *See also Conteh v. Conteh*, 392 Md. 436, 437, 897 A.2d 810, 810 (2006). For the third step, the General Assembly has enumerated eleven factors for the court's consideration:

(b) *Factors in determining amount and method of payment or terms of transfer.* — **The court shall determine** the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, **after considering each of the following factors:**

(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property described in subsection (a)(2) of this section, or both;

(9) the contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in

30

subsection (a)(2) of this section, or both.

FL § 8-205(b) (emphasis added).

It is the duty of the trial judge to consider the statutory factors under FL § 8-205(b). This requires the consideration of a party's actual or anticipated Social Security benefits even though those benefits are classified as non-marital property:

> Consideration of two of those factors, the value of all property interests of each party and the economic circumstances of each party at the time the award is to be made, obviously requires the court to be aware of any non-marital property and have some idea of its worth. **We do not believe that the statute requires the court to evaluate non-marital property in the same manner as marital property. It is enough if the court is generally aware of the relative wealth of the parties, in order that it can determine whether it would be equitable to award a greater share of marital property to the spouse owning less of the total property and having less wealth because of that spouse's greater need and the wealthy spouse's lesser need for additional assets.**

*Melrod v. Melrod*, 83 Md. App. 180, 197–98, 574 A.2d 1, 9 (1990) (emphasis added). *See* FL § 8-205(b) ("The court shall determine the amount and the method of payment of a monetary award . . . after considering each of the following factors . . . .").

Consideration of a party's actual or anticipated Social Security benefits assists the court in its determination of whether to grant a monetary award to adjust the equities and rights of the parties concerning marital property. *See Depot*, 893 A.2d at 1002 ("Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs, and, in turn, an inequitable division of the marital property."). *See also* CYNTHIA CALLAHAN & THOMAS C. RIES, FADER'S MARYLAND FAMILY LAW §12-14[d] (5th ed. 2011) (stating Social Security

31

benefits "remain[] as an economic factor to be considered, as any other economic factor in pay status") (citing *Pleasant*, 97 Md.App. at 720, 632 A.2d at 207). "[T]he court must consider the statutory factors contained in F.L. § 8-205(b) . . . . § 8-205(b)(11) states that, in granting a monetary award, the court may consider 'any other factor' it deems necessary to 'arrive at a fair and equitable' award." *Innerbichler v. Innerbichler*, 132 Md. App. 207, 228, 237, 752 A.2d 291, 302, 307 (2000) (citations omitted). "After proper consideration of those factors, the ultimate decision of whether to grant a monetary award and the amount of such an award are matters entrusted to the sound discretion of the trial court." *Ware v. Ware*, 131 Md. App. 207, 214, 748 A.2d 1031, 1034 (2000).

The trial judge may "enter a monetary award against one party and in favor of the other when that action is appropriate to adjust an inequity that would otherwise result from distribution, strictly in accordance with title, of property qualifying as 'marital property.'" *Herget v. Herget*, 319 Md. 466, 471, 573 A.2d 798, 800 (1990). Importantly, although a trial judge is required to consider actual or anticipated Social Security benefits as a relevant factor under FL § 8-205(b), "[t]he decision whether to grant a monetary award is generally within the sound discretion of the trial court." *Alston*, 331 Md. at 504, 629 A.2d at 74. General consideration of Social Security benefits does not compel a judge to grant a monetary award. "[A] trial court must exercise its discretion in accordance with correct legal standards." *Alston*, 331 Md. at 504, 629 A.2d at 74. *See also Woodson v. Saldana*, 165 Md. App. 480, 489, 885 A.2d 907, 912 (2005) ("While consideration of the factors is mandatory, the trial

32

court need not go through a detailed check list of the statutory factors, specifically referring to each, however beneficial such a procedure might be . . . for purposes of appellate review.") (citation and internal quotation marks omitted). "In Maryland, as in the majority of equitable distribution states, 'equitable' does not necessarily mean 'equal.'" *Alston*, 331 Md. at, 508–09, 629 A.2d at 76 (citing *Deering v. Deering*, 292 Md. 115, 131, 437 A.2d 883, 892 (1981)). *See also Caccamise v. Caccamise*, 130 Md. App. 505, 521, 747 A.2d 221, 229 (2000) ("The court, after a consideration of the factors listed in F.L. § 8-205, may decree an unequal division and state the reasons for such an allocation."); *Randolph v. Randolph*, 67 Md. App. 577, 588, 508 A.2d 996, 1001 (1986) ("The statute is designed to achieve equity between the parties; it does not require an equal division of marital property.") (citation omitted).

In the case *sub judice*, the trial judge abided by FL §§ 8-202 and 8-203. The judge properly classified Sollie's anticipated Social Security benefits as non-marital property (as well as Jackson's minuscule amount of anticipated benefits), and then determined that portions of each party's pension constituted marital property.[12] Retirement benefits accrued during marriage are considered marital property. *Deering*, 292 Md. at 128, 437 A.2d at 890. *See also* FL §§ 8-204(b) and 8-205(a). The Circuit Court then announced, in its memorandum opinion:

---

[12] Both pensions contain a non-marital portion, which reflects the contributions made by each party prior to their marriage. Approximately 91% of Jackson's CSRS pension is considered marital property.

Maryland law is clear with regard to the disposition of marital property. The court is to first determine what is marital property, then value the property, and then make an award that equitably divides the property . . . .

[Jackson]'s argument regarding fairness and equitable distribution is compelling . . . . However, equitable distribution does not mean equal. The Court can only divide marital property. Social Security retirement benefits are not marital property. Certainly, there will be other inequities, where one party may end up better off than the other. It is not the role of the Court to make things equal, only to divide marital property equally. Social Security retirement benefits, not being marital property, are not part of the division . . . .

Each party's retirement shall be divided in accordance with the Bangs Formula, giving each party 50% of the marital share of the other party's retirement, with the marital share being defined as the number of months of the employee's qualifying participation in the plan from June 21, 1980 and June 25, 2015 and the denominator being the total number of months of the employee's qualifying participation in the plan.

The Circuit Court properly recognized that it was without authority to order an offset in this case. In light of this opinion and our interpretation of FL§ 8-205(b), however, we remand this case to the Circuit Court for its general consideration of Social Security benefits. It is clear from the record that the trial judge did not consider the anticipated Social Security benefits of the parties as a relevant factor under FL § 8-205(b) when determining an equitable distribution of the marital property.

## CONCLUSION

Accordingly, we vacate the judgment of the Circuit Court, and remand the case for that court to take into consideration the parties' anticipated Social Security benefits. A trial court is preempted by federal law from dividing Social Security benefits (including its hypothetical value allegedly located within a CSRS pension) directly or indirectly by way of an offset. A

34

trial judge, however, must consider actual or anticipated Social Security benefits as a relevant factor under FL § 8-205(b) in deciding whether to grant a monetary award to adjust the equities and rights of the parties in marital property.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY VACATED. CASE IS REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE PARTIES TO ABIDE THEIR COSTS.**

Circuit Court for Howard County
Case No. 13-C-14-101240

Argued: February 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 62

September Term, 2015

_____

MILTON EVERETT JACKSON

v.

GAYLE ANN SOLLIE F/K/A
GAYLE S. JACKSON

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Dissenting Opinion by Watts, J., which Hotten,
J., joins

_____

Filed:  July 19, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, she also participated in the decision and
adoption of the majority opinion.

Respectfully, I dissent.  The majority opinion raises several concerns.  Specifically, among other things, the Majority exceeds the issue that is before this Court; the Majority's holding will require trial courts to speculate about future Social Security benefits in divorce actions; and, as to the authority for its holding, the Majority relies on a provision of a statute that does not authorize speculation by trial courts about future economic circumstances of litigants.  Contrary to the result reached by the Majority, I would affirm the judgment of the Circuit Court for Howard County and hold that Social Security benefits are not to be offset against the marital portion of a Civil Service Retirement System ("CSRS") pension in a divorce action or to be considered a factor under Md. Code Ann., Fam. Law (1984, 2012 Repl. Vol.) ("FL") § 8-205(b) in determining a monetary award in a divorce action.

The only issue before this Court—which Milton Everett Jackson, Petitioner, raised in a petition for a writ of *certiorari*—is as follows: "Should Maryland [follow] the majority of States and require a trial [court] to consider whether Social Security benefits **should be offset against the marital portion of [a] CSRS pension** upon dividing assets as a result of divorce?"  (Emphasis added) (underlining and some capitalization omitted).

This issue indisputably arises from the facts of this somewhat-atypical divorce action, in which Gayle S. Jackson, Respondent, had Social Security benefits and a pension, while Petitioner, as a federal employee, had almost no Social Security benefits, but had a pension under the CSRS.  In other words, Petitioner paid into the CSRS, but did not pay into Social Security.  As the Social Security Administration explains, "[u]ntil 1984, employment by the [f]ederal government was covered under the Civil Service Retirement System [] and not by Social Security.  If you worked for a [f]ederal agency during those

years, you did not pay Social Security tax on your earnings[.]" Social Security Administration, Retirement Planner: Federal Government Employment, https://www.ssa.gov/planners/retire/fedgovees.html [https://perma.cc/2F6M-CQGA].

In addressing the facts set forth above, the Majority greatly exceeds the issue that is before this Court by issuing the broad holding that, in a divorce action, "in determining whether to grant a monetary award to adjust the equities and rights of the parties in marital property, . . . a trial court is required to consider the parties' actual or anticipated Social Security benefits as a relevant factor under FL § 8-205(b)." Maj. Slip Op. at 28.

The statute to which the Majority refers, FL § 8-205(b), lists the considerations that a court must take into account in determining a monetary award as follows:

> The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in property described in subsection (a)(2) of this section, or both, after considering each of the following factors:
>
> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> (2) the value of all property interests of each party;
>
> (3) the economic circumstances of each party at the time the award is to be made;
>
> (4) the circumstances that contributed to the estrangement of the parties;
>
> (5) the duration of the marriage;
>
> (6) the age of each party;
>
> (7) the physical and mental condition of each party;
>
> (8) how and when specific marital property or interest in property

described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property described in subsection (a)(2) of this section, or both;

(9) the contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

**(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.**

(Emphasis added).

As to the authority for its holding, the Majority relies on FL § 8-205(b)(11), the "catchall" provision that enables a trial court to consider "any other factor that the court considers necessary or appropriate." See Maj. Slip Op. at 22 ("[T]he Court of Special Appeals stated: 'In an appropriate case, of course, it may be that a court could consider the fact that a party is receiving, or will receive, social security benefits, as 'any other factor' in determining whether to make a monetary award.' We agree." (Citation omitted)). In my view, contrary to the Majority's reasoning, FL § 8-205(b)(11) does not authorize a trial court to speculate as to future Social Security benefits. In other words, that FL § 8-205(b)(11) provides that a court may consider "any other factor that the court considers necessary or appropriate" does not authorize a court to engage in speculation about a party's future receipt of Social Security benefits.

With its inclusion of Social Security benefits as a factor to be considered under FL

§ 8-205(b)(11), the Majority's broad holding will cause difficulties in countless divorce actions. The exact amount of Social Security benefits to which a person will be entitled in the future depends on several variables, such as the amount of money that a person earns prior to retirement and the age at which the person retires. Indeed, the Social Security Administration provides estimates, not guaranteed amounts, of Social Security benefits. Thus, it is inherently speculative to attempt to estimate an amount of Social Security benefits to which a person will be entitled in the future, and to base a monetary award in a divorce action on such an estimate.

Yet, the Majority expects trial courts to engage in such speculation, and leaves several important questions unanswered. How exactly should a trial court go about calculating future Social Security benefits? What if the trial court values future Social Security benefits at a certain amount, and, years later, it turns out that the trial court's valuation was too high or too low? That outcome is not unlikely, given that, again, it is inherently speculative to attempt to pinpoint the exact amount of Social Security benefits to which a person will be entitled in the future.

Notably, in drafting FL § 8-205(b), the General Assembly carefully refrained from forcing trial courts to attempt to predict the future. Instead, FL § 8-205(b)(3) requires a trial court to consider "the economic circumstances of each party **at the time the award is to be made**[.]" (Emphasis added). It is reasonable to require a trial court to ascertain a spouse's existing economic circumstances; it is not reasonable to require a trial court to come up with an estimate as to a spouse's future economic circumstances, including future entitlement to Social Security benefits.

As discussed above, in this case, one spouse had Social Security benefits, while the other spouse had almost no Social Security benefits. The out-of-State cases upon which the Majority relies, in which both parties worked and earned Social Security benefits, reach disparate outcomes.

For example, the Majority relies on Depot v. Depot, 893 A.2d 995 (Me. 2006). See Maj. Slip Op. at 23, 24-25, 31. In Depot, 893 A.2d at 997 n.1, the evidence before the trial court included "an accountant's present value estimate of both parties' anticipated Social Security benefits[.]" In Depot, id., an issue as to equitable distribution arose not because one spouse was entitled to little or no Social Security benefits; instead, an issue as to equitable distribution arose because one spouse was allegedly entitled to more than twice as much in Social Security benefits as the other spouse. The trial court awarded the second spouse more than half of one of the first spouse's retirement accounts "to balance the perceived 'present value' of all of their existing retirement assets, including Social Security benefits[.]" Id. at 997. The first spouse appealed, "contending that the court erred when it awarded [the second spouse] marital property to offset a portion of an accountant's estimate of the present value of [the first spouse]'s expected Social Security benefits." Id. The Supreme Judicial Court of Maine agreed, vacated the trial court's judgment, see id., and held "that transferring other assets to balance or offset expected Social Security benefits is not permitted." Id. at 1000 (citations omitted).

In another example, the Majority relies on In re Marriage of Boyer, 538 N.W.2d 293 (Iowa 1995). See Maj. Slip Op. at 25-26. In Boyer, 538 N.W.2d at 294, one party "presented evidence" of the "present value" of each party's accumulated Social Security

benefits. As in Depot, there was a disparity between the parties' Social Security benefits; specifically, in Boyer, 538 N.W.2d at 294, one spouse was entitled to more than three times as much in Social Security benefits as the other spouse. The trial court awarded the second spouse multiple assets "'to equalize the property distribution, and also recognizing and taking into consideration the greater benefit [that the first spouse] w[ould] be getting from [S]ocial [S]ecurity.'" Id. The Supreme Court of Iowa concluded "that [S]tate courts are without power to directly or (by way of setoff) indirectly divide [S]ocial [S]ecurity benefits in their formulation of economic terms and dissolution decrees." Id. at 295. The Court further determined, however, that a disparity between spouses' Social Security benefits could "be weighed as a factor in fixing the economic terms of a dissolution decree." Id. at 294.

The Majority also relies on Neville v. Neville, 791 N.E.2d 434, 437 (Ohio 2003). See Maj. Slip Op. at 27. In Neville, 791 N.E.2d at 435, a magistrate considered "the parties' anticipated Social Security benefits[.]" As in Depot and Boyer, one spouse was entitled to much more in Social Security benefits than the other spouse; specifically, in Neville, 791 N.E.2d at 435 n.1, one spouse was entitled to nearly twice as much in Social Security benefits as the other spouse. "The magistrate recommended that [the second spouse] be awarded the equity in the marital residence, explicitly balancing its value against [the first spouse]'s Social Security benefits." Id. at 435. A trial court adopted the magistrate's recommendation; an intermediate appellate court reversed the trial court's judgment; and the Supreme Court of Ohio reversed the intermediate appellate court's judgment, concluding that "a trial court, in seeking to make an equitable distribution of marital

property, may consider the parties' future Social Security benefits in relation to all marital assets." Id. at 435-36.

The Majority relies on only one case where, as here, one party was entitled to Social Security benefits, while the other party participated in the CSRS. Specifically, the Majority quotes the following holding from Johnson v. Johnson, 734 N.W.2d 801, 809 (S.D. 2007): "[A] court may premise an unequal distribution of marital property on the fact that one party is likely to receive or, in this case, is receiving social security benefits." See Maj. Slip Op. at 26. In Johnson, 734 N.W.2d at 804, one party was "currently receiv[ing S]ocial [S]ecurity benefits[,]" while the other was a federal employee who participated in the CSRS. In Johnson, id. at 805, one party raised an issue that was similar to the issue that Petitioner raised in this case: "Whether the trial court abused its discretion when it did not offset [one party]'s [S]ocial [S]ecurity benefits against [the other party's] CSRS benefits." As the Majority does here, the South Dakota court exceeded this issue by broadly holding—without any reference to the CSRS in that holding—that "[S]ocial [S]ecurity benefits may be considered as a factor, among others, when dividing marital property." Id. at 808. Because that, in Johnson, the Supreme Court of South Dakota went beyond that case's facts, does not mean that this Court must follow in kind.

Equally important, as the majority opinion acknowledges, Social Security benefits do not constitute "property." See Maj. Slip Op. at 12 ("Social Security benefits are not considered property, but instead are considered non-contractual benefits." (Citing Flemming v. Nestor, 363 U.S. 603, 610 (1960)); Flemming, 363 U.S. at 608 (A person's "right to Social Security benefits cannot properly be considered to have been" "an 'accrued

property right.'"  (Citation omitted)).  Indeed, the Social Security Act expressly states that Social Security benefits are non-transferable and non-assignable:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).  In other words, in stark contrast to property, Social Security benefits cannot be bought, sold, or subject to encumbrances.

Indeed, the Supreme Court has described the Social Security system "as a form of social insurance, enacted pursuant to Congress'[s] power to spend money in aid of the general welfare, whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents." Flemming, 363 U.S. at 609 (citation and internal quotation marks omitted).  Social Security benefits are based on an employee's "contributions [] made to the national economy while actively employed, [and] are not dependent on the degree to which [the employee] was called upon the support the system by taxation." Id.  Unlike most private pension plans, Social Security benefits are not contractual.  Hisquierdo v. Hisquierdo, 439 U.S. 572, 575 (1979).  And, Social Security benefits are not accrued property rights; indeed, Congress has retained "a clause expressly reserving to it the right to alter, amend, or repeal any provision of the [Social Security] Act." Flemming, 363 U.S. at 610-11 (citations, internal quotation marks, and parentheses omitted).

In Hisquierdo, 439 U.S. at 573, 585, the Supreme Court addressed a trial court's award to a wife of an interest in the husband's expectation of receiving benefits under the

Railroad Retirement Act of 1974, and held that the Railroad Retirement Act prohibited such an allocation and division of benefits. In so holding, the Supreme Court observed that the Railroad Retirement Act was similar, in many aspects, to the Social Security Act; for example, "[l]ike Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." Id. at 575 (footnote omitted). The Railroad Retirement Act also contained a provision similar to 42 U.S.C. § 407 that stated: "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated[.]" Hisquierdo, 439 U.S. at 576 (quoting 45 U.S.C. § 231m). And, like the Social Security Act, Congress made an exception to the Railroad Retirement Act to permit collection and enforcement of child support and alimony obligations. Id. The Supreme Court explained that the Railroad Retirement Act, specifically 45 U.S.C. § 231m, protected Congress's choice to target the benefits created by the Railroad Retirement Act to the employee and not a divorced spouse:

> Congress has made a choice, and [45 U.S.C.] § 231m protects it. It is for Congress to decide how these finite funds are to be allocated. The statutory balance is delicate. Congress has fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective. By reducing benefits received, it discourages the divorced employee from retiring. And it provides the employee with an incentive to keep working, because the former spouse has no community property claim to salary earned after the marital community is dissolved. Section 231m shields the distribution of benefits from state decisions that would actually reverse the flow of incentives Congress originally intended.

Hisquierdo, 439 U.S. at 585. The Supreme Court stated that it could not "lightly discard the settled view that anti-assignment statutes have substantive meaning[,]" and that 45 U.S.C. 231m went "far beyond garnishment" and made "no exception for a spouse." Id. at 586.

In the wake of Hisquierdo, although Hisquierdo involved the division of benefits under the Railroad Retirement Act, courts have held that the Social Security Act's prohibition against transfer and assignment, as codified at 42 U.S.C. § 407, prohibits the division of Social Security benefits in a divorce proceeding. See, e.g., Boyer, 538 N.W.2d at 295 ("It is apparent that *Hisquierdo* bars state courts from adjusting the parties' disproportionate [S]ocial [S]ecurity benefit expectations when formulating economic terms of dissolution decrees. The preemptive language of the railroad act . . . involved in *Hisquierdo* is sufficiently similar to that in the [S]ocial [S]ecurity [A]ct involved here to render the *Hisquierdo* holding binding here. . . . So we agree . . . that [S]tate courts are without power to directly or (by way of setoff) indirectly divide [S]ocial [S]ecurity benefits in their formulation of economic terms and dissolution decrees."); Olson v. Olson, 445 N.W.2d 1, 11 (N.D. 1989) ("To summarize: Before *Hisquierdo*, [] a few decisions permitted limited use of [S]ocial [S]ecurity benefits in marital property division. Following *Hisquierdo* . . . , [S]tate courts uniformly deny allocation of [S]ocial [S]ecurity as marital property. Although marital property is generally under [S]tate control, it is clear to us that Congress wants [S]ocial [S]ecurity to be exclusively federally controlled. . . . We conclude that [S]ocial [S]ecurity cannot be distributed or used as an offset in division of marital

property.  To do so would conflict with the federal plan and would violate the Supremacy Clause of the United States Constitution.  Any change in the allocation of [S]ocial [S]ecurity at divorce must come from Congress."  (Footnote and paragraph breaks omitted)).

It also bears noting that it is well-publicized that the stability of the Social Security trust fund is in question.  See, e.g., Jonnelle Marte, "Social Security trust fund will be empty in less than 20 years," Washington Post, June 22, 2016, available at https://www. washingtonpost.com/news/get-there/wp/2016/06/22/social-security-and-medicare-still-face-shortfalls-trustees-say/ [https://perma.cc/48L9-BWUW] ("[T]he Social Security trust fund has enough cash to pay full benefits for another 18 years[.]").  These potential circumstances make it even more difficult for a trial court to estimate the amount of Social Security benefits that a party will receive in the future.

Courts in other jurisdictions have been confronted with the circumstance of one party's having paid into the CSRS—which exempted the spouse from Social Security— and have not concluded globally, as the Majority does, that present and future Social Security benefits are a factor to be considered in determining a martial property award.  In Cornbleth v. Cornbleth, 580 A.2d 369, 373 (Pa. Super. Ct. 1990), appeal denied, 585 A.2d 468 (Pa. 1991), the Superior Court of Pennsylvania held that, in equitably distributing property in a divorce, the trial court should have considered exempt from distribution a portion of a CSRS pension equal to a Social Security benefit; i.e., the trial court should have considered an offset of a spouse's non-marital property Social Security benefits contained within that spouse's CSRS pension.  In Cornbleth, id. at 371, the husband was

participating in a CSRS pension plan and did not participate in Social Security; and, "any

eligibility for Social Security would result in a commensurate decrease in his pension

annuity under the" Civil Service Retirement Act. Both the husband and wife had sizable

pensions, and the wife also paid into Social Security. Id. at 372. On appeal, the husband

argued that, although under federal law Social Security benefits are not marital property,

"all or at least a portion of his CSRS pension should be similarly treated" due to his

nonparticipation in Social Security. Id. at 371. The Superior Court of Pennsylvania agreed

with the husband, explaining:

> To the extent individuals with Social Security benefits enjoy an exemption of that "asset" from equitable distribution we believe those individuals participating in the CSRS must, likewise, be so positioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution. In contrast, an individual who was a civil service participant for many years will, if the trial court's approach is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall. The situation is exacerbated, thus providing a second "blow", in that the money that would, in a conventional setting, be routed into Social Security, and thus into an exempt status, would either have been consumed by the couple, thus providing previous benefits enjoyed by both, or, perhaps, routed into the CSRS or another retirement type vehicle, which, of course, would then be included in the marital estate.
>
> In either scenario, a substantial stream of income which would be used to finance a future Social Security benefit, which for most individuals is excluded from equitable distribution, is not similarly shielded for the CSRS participant. Thus, the CSRS participant is at a disadvantage when compared to the majority of the work force. Consequently, should equity prevail, this difference must be negated if we are to equate the CSRS participant with Social Security participants.

Id. at 371-72 (footnote omitted).  As to how to calculate the offset, the Superior Court of

Pennsylvania stated:

> To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system.  This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes.  This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes.

Id. at 372.

In Harshbarger v. Harshbarger, 814 N.E.2d 105, 109-10 (Ohio Ct. App. 2004), the

Court of Appeals of Ohio stated:

> Consider a situation in which one spouse has accrued retirement benefits during the marriage under a pension plan that exempts that spouse from Social Security, and the other spouse, for whatever reason, has no retirement benefits, either under a pension plan or under Social Security. Barring unusual circumstances, an equitable division of the retirement benefits accrued during the marriage would be an equal division of those benefits . . . . It would not seem to be equitable, and we are aware of no cases finding it to be equitable, to offset against the retirement benefits accrued during the marriage by the only spouse who has accrued retirement benefits of any kind an amount [that is] equal to the hypothetical Social Security benefits that that spouse would have accrued had that spouse been under Social Security.  For example, [suppose that a] husband has accrued during the marriage retirement benefits that will pay $5,000 a month, but would have accrued Social Security benefits paying $2,000 a month had he been under Social Security.  Because all of the retirement benefits—$5,000 per month—were accrued during the marriage, it is obviously equitable to divide those benefits equally, so that each spouse receives $2,500 per month.  But if the husband's hypothesized Social Security benefits in the amount of $2,000 per month are first deducted from his pension, leaving $3,000 to be divided, his wife will receive $1,500 per month, and he will receive $3,500 per month, which is not an equal division, and therefore an inequitable division, barring unusual circumstances.

Using the non-Social Security spouse's hypothetical Social Security benefit instead of the Social Security spouse's actual Social Security benefit approaches this obviously inequitable result[,] as the Social Security spouse's actual Social Security benefit approaches zero.

Where the non-Social Security spouse's retirement benefits [that were] accrued during the marriage exceed the Social Security spouse's Social Security benefits [that were] accrued during the marriage, using the Social Security spouse's actual [S]ocial [S]ecurity benefits as an offset will always result in the equivalent of an equal division of the retirement benefits [that were] accrued during the marriage[,] and is therefore the more equitable method of division, barring unusual circumstances justifying an unequal division.

In Harshbarger, id. at 107, one spouse was entitled to Social Security benefits, while the other spouse was a federal employee who participated in the CSRS; as far as the opinion reveals, the latter spouse was not entitled to any Social Security benefits. One spouse filed for divorce, see id. at 107, and a trial court concluded that "'equity dictates that[,] since a portion of [the non-Social Security spouse]'s pension is in lieu of Social Security benefits, that portion should be shielded from an equitable distribution[,]'" id. at 108 (brackets omitted). The Social Security spouse appealed and contended that "'[t]he trial court abused its discretion in its determination of the [S]ocial [S]ecurity [offset] of [the Social Security spouse]'s [S]ocial [S]ecurity retirement against [the non-Social Security spouse]'s civil service retirement.'" Id. The Court of Appeals of Ohio agreed and "conclude[d] that it is an abuse of discretion to apply the hypothetical Social Security offset instead of offsetting the actual amount of the Social Security spouse's Social Security benefits [that were] accrued during the marriage against the retirement benefits of the non-Social Security spouse [that were] accrued during the marriage." Id. at 110.

In sum, it is undisputed that Social Security benefits are non-marital property and

- 14 -

that the Social Security Act expressly prohibits the division of Social Security benefits in a divorce proceeding. However, whether an offset, or even consideration, of Social Security benefits as a factor can be taken into account by a trial court in dividing marital property is an issue of first impression in Maryland; and, the Supreme Court has not spoken on the subject. As discussed above, courts in other jurisdictions are split on the matter and follow one of three approaches: (1) an offset of Social Security benefits is prohibited by 42 U.S.C. § 407 and Social Security benefits are not to be considered in the division of marital property (this is the approach advocated by Respondent in this case); (2) an indirect offset of Social Security benefits—either by: (a) offsetting the actual amount of one spouse's Social Security benefits accrued during the marriage against the retirement benefits of the CSRS pension spouse accrued during the marriage, or (b) determining the present value of the CSRS pension spouse's Social Security benefits had he or she participated in Social Security during the marriage (this latter approach is the approach advocated by Petitioner in this case)—is permissible; or (3) an offset of Social Security benefits is not allowed but a trial court may consider one spouse's Social Security benefits in the division of marital property.

I would affirm the judgment of the Circuit Court for Howard County and hold that Social Security benefits are not to be offset against the marital portion of a CSRS pension in a divorce action or to be considered a factor under FL § 8-205(b) in determining a monetary award in a divorce action. To the extent that in a footnote in Pleasant v. Pleasant, 97 Md. App. 711, 720 n.3, 632 A.2d 202, 207 n.3 (1993), the Court of Special Appeals suggested that a trial court may consider Social Security benefits as a factor under FL § 8-

- 15 -

205(b)(11), I would not adopt this rationale. As discussed above, Social Security benefits are not property, let alone marital property; the value of future Social Security benefits is speculative at best; and the payment of Social Security benefits is not guaranteed.

The Majority makes Social Security benefits a new factor that is to be considered under FL § 8-205(b)(11) in routine divorce actions that involve the equitable distribution of marital property, regardless of the parties' circumstances with respect to having paid into Social Security. This holding greatly exceeds the question presented, ignores that Social Security benefits are not property, conflicts with FL § 8-205(b)(3)'s requirement that a monetary award be based on a party's current economic circumstances, and will force trial courts to speculate about the amount of future Social Security benefits.

For the above reasons, respectfully, I dissent.

Judge Hotten has authorized me to state that she joins in this opinion.